## I. R. GALOB v. VILLAGE OF HIBBING.

211 N. W. 2d 878.

October 26, 1973—No. 42767.

*I. R. Galob,* pro se, and *Tom Wangensteen,* for appellant.

*Abate, Wivoda & Ketola* and *James V. Abate,* for respondent.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

OTIS, JUSTICE.

Plaintiff in this action seeks to recover attorney's fees against the village of Hibbing for services he rendered in an injunction suit to restrain performance of a contract to purchase a generator for the village light plant. The trial court granted summary judgment for the defendant village and we affirm.

The history of these proceedings is set forth in Hughes v. Micka, 269 Minn. 268, 130 N. W. 2d 505 (1964), and Galob v. Sanborn, 281 Minn. 58, 160 N. W. 2d 262 (1968). In the Hughes case various taxpayers brought an action to restrain the village and its Public Utilities Commission from purchasing equipment which was to be paid out of a reserve for replacement fund. Plaintiff, who was then village attorney, took an active part in successfully defending the injunction action and thereafter sought payment for his services from both the commission and the village. Being unsuccessful, he brought a declaratory judgment suit seeking a determination that the services he rendered were on behalf of the commission and that it was legally obligated to pay the sum of $10,000 for such services. The trial court allowed his claim and we reversed in Galob v. Sanborn, *supra.* We held that the commission did not have the power to sue or be sued but was merely an agency or department of the village.

Thereafter, plaintiff brought this action against the village for the relief he was denied against the commission. In granting summary judgment, the trial court found that the services performed by plaintiff in the Hughes case were rendered without any agreement by either the village or the commission to compensate him over and above his salary as village attorney.

It is the contention of the plaintiff that although he appeared for the village in the Hughes case, the village was not a real party in interest and his appearance was for tactical purposes only.

He asserts that shortly after May 28, 1963, when the Hughes case was commenced, he attended a meeting in the office of Mr. C. G. Anderson, who was attorney for the commission, and that Commissioners Sanborn and Micka were in attendance. At that meeting, plaintiff contends, he was retained to assist Anderson in representing the commission. Although plaintiff submitted to the commission a statement for his services in the sum of $10,000 on January 11, 1965, the commission declined to approve it without an opinion from its attorney that the claim was valid. On February 23, 1965, the commission authorized its attorney to secure a declaratory judgment to establish the propriety of plaintiff's claim. In March, the village council executed a verified voucher addressed to the commission in the sum of $15,131.72 for plaintiff's services and those of counsel associated with him. The commission failed to approve the voucher.

The fact that he was counsel for the village in the original action was of no significance, plaintiff argues, because the village was merely a consumer and had no interest in the litigation. The defense was submitted to the commission and, according to plaintiff, they retained him under their statutory power so to do. Although neither the village nor the commission has ever formally authorized his retainer or approved payment for his services, plaintiff relies for recovery on the fact that he has performed services which were not germane to his office as village attorney and for which there was at least an implied agreement to compensate him.

L. 1907, c. 412, which applied to the village, authorized the creation of a water, light, power, and building commission in villages having a population of less than 10,000 inhabitants. Under that statute and subsequent acts granting the commission further powers, the commission is virtually autonomous except for the right to dispose of its property. L. 1949, c. 422, § 3, subd. 5, empowered the commission to employ an attorney, and L. 1951, c. 680, § 5, amended that provision to read:

"The commission may employ an attorney at a salary not ex-

ceeding $1,800 per annum, who may be regularly retained and perform such legal services and give such advice, as is required in the conduct of the normal business of the commission. The commission may pay to such retained counsel, and any attorney or attorneys they may deem expedient to hire specially, such additional reasonable sums for services rendered in connection with special work considered and determined by them to be in excess of normal requirements, including proceedings for the borrowing of money."

Plaintiff seeks to bring himself within that statute, alleging he was hired to perform services in connection with special work in excess of normal requirements. The fallacy in that argument is twofold. First, he was not, as the court found, hired specially by either the commission or the village; second, neither governing body determined that his participation in the Hughes case involved services in excess of normal requirements. We noted in State ex rel. Finlayson v. Gorman, 117 Minn. 323, 326, 136 N. W. 402, 403 (1912), where an attorney sought compensation from a city for representing a water, light, power, and building commission, that the commission "is merely a board or department of the city government" and "it has been given no power to sue or be sued, so that it stands in need of no attorney to carry on its litigation." [1] The fact that plaintiff was the village attorney and appeared in the Hughes case in that capacity creates an inference that his services were performed for work germane to his office which is difficult to rebut. In Jerome v. Burns, 202 Minn. 485, 490, 279 N. W. 237, 240 (1938), we approved the rule set forth by McQuillin as follows: [2]

[1] The case was decided before the enactment of L. 1951, c. 680, and held that the commission had no implied power to employ special counsel.

[2] 2 McQuillin, Municipal Corporations (2 ed.) § 544, p. 251. See, 4 McQuillin, Municipal Corporations (3 ed.) § 12.193, p. 78, which adds the following: "Extra compensation to the incumbent of an office or position in the municipal service cannot be based on a promise, contract,

"Where an officer performs duties imposed by law he is entitled to the compensation therefor fixed by law and no other. He is not entitled to extra compensation for services performed in the line of his official duty. The fact that the salary or compensation may be recognized as inadequate remuneration for the services exacted and actually performed does not change the rule. And the principle is the same although his duties are greatly increased. Courts everywhere recognize the necessity of protecting the public funds, and hence they will usually enforce the rule against permitting extra compensation either directly or indirectly, with appropriate strictness."

The equities favoring recovery in the instant case make our decision a difficult one. Plaintiff has performed services in good faith and with diligence and professional competence. Although the result seems harsh, we cannot ignore the overriding considerations of public policy which are reflected in the statute. The case for requiring an explicit contract of retainer either by resolution of the governing body or by some other written document is well stated in Cahn v. Town of Huntington, 29 N. Y. 2d 451, 455, 278 N. E. 2d 908, 910 (1972):

"* * * The salient purpose underlying this rule is, of course, to ensure responsible municipal government. Not only is it designed as a safeguard against the extravagance or corruption of municipal officials, as well as against their collusion with attorneys [citations omitted], but also, to prevent confusion and contradiction in the direction of the municipality's litigation."

For reasons which are obscure, the position of the commission and the village council in dealing with plaintiff's claim has been ambiguous and equivocal. Be that as it may, the record supports the trial court's conclusion that plaintiff is not entitled to extra

custom or usage, services pertaining to the duties of the office or employment, doubtful implication, implied contract or estoppel, or by indirect methods, although provided by statute, charter or ordinance." See, also, 63 Am. Jur. 2d, Public Officers and Employees, § 383.

compensation. We agree there was an inadequate showing he was hired specially to render services for work the commission or the village determined to be in excess of normal requirements, as the statute directs. Accordingly, we affirm.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.