The MERCHANTS NATIONAL BANK
OF WINONA, Appellant,

v.

TRANSAMERICA INSURANCE
COMPANY, Respondent.

No. C6–86–1912.

Court of Appeals of Minnesota.

June 23, 1987.
Review Denied Sept. 30, 1987.

Wayne E. Pflughoeft, Winona, for appellant.

Janey L. Gohl, Roderick D. Blanchard, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and STONE *, JJ.

## OPINION

CRIPPEN, Judge.

In this declaratory judgment action, appellant The Merchants National Bank of Winona challenges the trial court's determination that fictitious construction contracts containing forged signatures, which were assigned to the bank as a condition of obtaining loans, are neither "evidence of debt" nor "security agreements" as defined by an insurance policy issued to the bank by respondent Transamerica Insurance Company. We affirm.

## FACTS

Between 1975 and 1982, Merchants National made several commercial loans to the GHK Construction Company. Acting through Larry A. Hoppe, its principal owner, GHK used the loan proceeds to purchase construction materials. As a condition of issuing the loans, Merchants National often required Hoppe to present it with fully executed construction contracts and to assign to the bank all proceeds that GHK was entitled to receive under the construction contracts.

In 1980, in connection with a $50,000 loan, Hoppe assigned to Merchants National a fictitious construction contract bearing the forged signature of Allyn Jarvinson. For a $70,000 loan in 1981, Hoppe assigned to the bank a second fictitious construction contract bearing the forged signature of Mark Oium. In each instance, the assignment language was stamped directly onto the face of the construction contracts.

When GHK later defaulted on the loans, appellant filed a claim with its insurer, respondent Transamerica Insurance Company, asking for indemnification for the loss under its Bankers Blanket Bond policy. The policy generally excluded coverage for

losses resulting from loan defaults. However, Coverage E of the policy provided coverage for losses that resulted directly from the insured having "extended credit * * * on the faith of, or otherwise acted upon" certain counterfeit documents and certain documents bearing a forged signature, including documents of title, securities, deeds, mortgages, guarantees, evidences of debt, and security agreements. The bond policy also stated these definitions:

> "Evidence of debt" means an instrument, including a Negotiable Instrument, executed by a customer of the Insured and held by the Insured which in the regular course of business is treated as evidencing the customer's debt to the Insured. "Security Agreement" means an agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation.

Transamerica denied coverage on the grounds that the documents listed in Coverage E and defined by the policy did not include the forged construction contracts assigned to Merchants National by GHK. The bank brought this action, asking the trial court to declare that the construction contracts constituted either evidence of debt, or security agreements, or both.

The trial court found that appellant extended credit to GHK on the faith of the forged construction contracts. The court observed that the bank "acknowledges that the contracts involved here are not primary evidences of debt such as promissory notes or checks," but that the bank "argues the definition of Evidence of Debt contained in the Policy is broad enough to include instruments which banks treat as evidences of debt in the regular course of business even though such instruments might not traditionally be viewed as evidence of debt."

Upon review of the documents listed in Coverage E, the court found they are all "items which in themselves have value or are the embodiment of the debt or obli-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

gation itself," while, in contrast, the "contracts submitted by Hoppe do not in themselves have any real value [but are] merely evidences of a contract between Hoppe and his customers." Thus, the court found the contracts neither evidenced GHK's debt to Merchants National nor constituted a "security agreement as that term is defined in the policy * * *."

The trial court acknowledged its duty to construe any ambiguities in the insurance contract in favor of the insured, but found no ambiguity. Hypothesizing that there were ambiguities in the term "evidence of debt," the trial court nevertheless found the evidence did not support appellant's broad view of the meaning of that term. The court concluded: "It is clear from an overall reading of Coverage E that contracts of this nature are not the type of instruments intended to be covered by the policy." The trial court entered judgment for respondent Transamerica, and the bank appeals.

### ISSUE

Did the trial court err in finding that the construction contracts did not constitute evidence of debt or security agreements as defined by the insurance policy?

### ANALYSIS

This is primarily an independent review of the trial court's interpretation of an insurance contract, involving questions of law. *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn.1978) The trial court's underlying findings of fact will not be disturbed unless clearly erroneous, giving due deference to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01.

#### 1. Evidence of debt.

Appellant claims the construction contracts are evidence of debt as defined by the insurance policy. The trial court concluded that contracts such as those submitted to appellant by GHK are not, "in the regular course of business," "treated as evidencing the customer's debt to the Insured." The court's determination was partially based on opinion testimony on accepted banking practices.

Four of appellant's witnesses, all of whom are Merchants National loan officers, testified that the bond's definition of "evidence of debt" included ancillary documents contained in a customer's loan file. One officer testified that no promissory note would issue unless the proper security, such as the construction contracts, were submitted. Another loan officer testified that although the promissory note is the primary document evidencing the customer's debt, the bank ledger is the most accurate document as to the indebtedness. A witness who was not a bank employee also testified that assignments of contract proceeds are treated as evidence of debt in the regular course of banking. Respondent's sole expert witness, a vice president of a subsidiary of First Bank Systems, testified that the construction contracts, read independently of the assignment language and standing alone, do not evidence the customer's debt to the bank.

█ The trial court rejected appellant's evidence on this issue, stating:

[H]aving examined the terms of the Bankers Bond and having heard the evidence present at trial, [the court] finds the preponderance of the evidence does not support [the Bank's] position. Simply looking at the contracts alone, they do not truly evidence a debt even between Hoppe and the fictitious customer and by no stretch of the imagination do the contracts themselves evidence a debt of Hoppe to the Bank.

The trial court's conclusion is supported by the nature of the documents covered by the policy and by the testimony of record. "Evidence of debt" refers to primary indicia of debt, such as promissory notes or other instruments that reflect a customer's debt to the bank. Under this standard, the construction contracts do not constitute evidence of GHK's debt to Merchants National. Given the trial court's opportunity to judge the credibility of witnesses' testimony on the meaning of "the regular course of business," we find no basis for reversing the trial court's finding in this regard.

### 2. Security agreement.

 The trial court determined that Coverage E necessarily refers only to documents that have real value to the insured bank in the event of the borrower's default. We agree. The policy definition of security agreement refers to the creation of an interest in property. In contrast to documents listed in Coverage E that create an interest in property, the construction contracts here, absent performance by GHK, were of no value.

Appellant argues the trial court erred by viewing the construction contracts separately from the assignment clauses stamped onto the face of the contracts. Appellant claims the construction contracts are an integral part of the security agreements, because each assignment clause specifically refers to and incorporates by reference the construction contract and because the assignment clause is meaningless without the underlying forged contract. The trial court concluded that although the assignment clause might be evidence of a security agreement, the "assignment clause is something entirely separate from the contracts themselves." The court observed that the "assignments themselves are not forged and thus are not covered by any of the Bankers Bond policy provisions."

We reach no conclusion on whether the construction contracts are part of the instruments of assignment. Even assuming integration of the contracts and the assignment clauses, however, we do not find significance in the two instruments. Absent Hoppe's performance under the contract, neither the contract nor the assignment clause are of value.

Finally, appellant urges consideration of language contained in an earlier bond policy, which provided coverage for "securities, documents or other written instruments" that contained a forgery. That language was significantly changed in 1980 to the current provisions and definitions and is not relevant to the present determination of rights under the insurance contract.

In sum, the fact that the bank took the construction contracts as security for its loans to GHK does not mean the contracts are security agreements within the definition in the policy.

### DECISION

The trial court properly determined that appellant's loss is not covered by the provisions of the insurance policy issued to appellant by respondent.

Affirmed.