Donald **BULLER**, et al., Appellants,

v.

**MINNESOTA LAWYERS MUTUAL**, Respondent.

No. C8–01–2237.

Court of Appeals of Minnesota.

June 18, 2002.

Steven S. Fuller, Fuller Law Firm, Rochester, MN, for appellants.

Rich Thomas, Burke & Thomas, St. Paul, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.*

## OPINION

R.A. RANDALL, Judge.

Appellants sued the insured attorney for malpractice. Appellants and the attorney entered into a Miller–Shugart agreement,[1] and appellants filed an action against respondent-insurer, seeking to declare that respondent's policy provided coverage for appellants' claim. Appellants challenge the district court's decision, adopted from the consensual special magistrate's findings of fact and conclusions of law, that respondent's policy did not provide coverage for the malpractice claim. Appellants argue the consensual special magistrate erred in determining that (1) the policy provided continuous coverage only from 1994 when the attorney's law firm disbanded and he was issued a new policy from the insurer; and (2) the attorney's misrepresentation increased respondent's risk of loss. This court also directed the parties to address whether the decision is appealable. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Under *Miller v. Shugart*, 316 N.W.2d 729, 732–34 (Minn.1982), an insured may settle a claim on the condition that the settlement is collectible only from the available insurance.

Appellants and the attorney entered a stipulated settlement agreement pursuant to the procedure described in *Miller v. Shugart*, under which, the attorney stipulated to entry of judgment against him for $382,500, and appellants agreed to seek to satisfy the judgment solely from respondent.

## FACTS

In January 1999, appellants Donald and Eileen Buller sued attorney Ronald Schneider for malpractice arising out of Schneider's failure to properly plead fraud and punitive damages in the underlying action where appellants sued the distributor for various claims resulting from appellants' purchase of several silos from the distributor. *See Buller v. A.O. Smith Harvestore Prods.*, 518 N.W.2d 537 (Minn. 1994) (concluding district court did not clearly err in finding parties did not impliedly consent to try fraud issue for 1978 silo purchases). Respondent Minnesota Lawyers Mutual, who provided malpractice insurance to Schneider, denied coverage under the policy based on exclusions in the policy.

Respondent began providing coverage to Schneider and his law firm on August 27, 1987, and this policy was renewed annually on August 27 ("1987 Policy"). Between 1987 and 1994, several different entities and individuals were named as insureds on the 1987 policy. But because Schneider's law firm disbanded, the 1987 policy renewal effective August 27, 1994, was cancelled September 15, 1994. Also on that day, respondent issued a new malpractice policy in the name of the "Ronald H. Schneider, P.A." ("1994 Policy").

Respondent insured Schneider under "claims-made" policies. The policies had a beginning and ending date, covering a one-year period. The 1994 policy and renewals provided coverage

> for CLAIMS first reported to U.S. during the POLICY PERIOD if the act, error or omission occurred during the POLICY PERIOD. This policy also covers CLAIMS resulting from any act, error or omission which occurred prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE if the insured had no knowledge of facts which could reasonably support a CLAIM at the effective date of the first policy written and continuously renewed.

Under the terms of the policy, the "policy period" is from the effective date to the expiration date, and the "effective date" is the renewal date.

In the underlying case that gave rise to the malpractice claim, the district court issued its decision on September 22, 1992, finding that the fraud claim relating to the 1978 silo purchases had not been tried by the express or implied consent of the parties. On October 19, 1993, this court reversed the district court, and on June 24, 1994, the supreme court reversed this court and reinstated the district court's decision.

In June 1993, as part of respondent's policy renewal process, Schneider completed the application for coverage for the 1993/1994 policy period. As part of the application, respondent asked whether any firm member was "aware of ANY INCIDENT which COULD REASONABLY result in a claim being made against the applicant, its predecessor or any past or present firm members?" Schneider did not report appellants' potential claim as part of the 1993/1994 renewal application. Schneider signed the application, which certified the application as true to the best of his knowledge. Likewise, Schneider did not disclose appellant's potential claim on his renewal application completed in May 1994 for the 1994/1995 policy period or on his application for coverage for his new firm completed in September 1994. Also in September 1994, Schneider certified "there has been no change in the information previously provided on the application for this coverage." It is undisputed that Schneider did not disclose the claim until January 1999 when he was first served with process in the legal malpractice case.

After respondent denied coverage under the policy, Schneider entered into a Miller–Shugart agreement with appellants. Then in September 1999, appellants filed a declaratory action asking the district court to declare that respondent's policy provided coverage for appellants' claim.

The parties agreed to have a retired Minnesota Supreme Court justice hear and decide the case. In September 2001, the retired justice concluded that the policy in effect when Schneider first reported the claim (the 1998/1999 policy) did not provide coverage for appellants' claim because (1) the claim did not meet the requirements for claims-made coverage under the policy and (2) Schneider's material representation in negotiating for the 1998/1999 policy would have voided any coverage under Minn.Stat. § 60A.08(9) (2000). The district court adopted the retired justice's findings of fact and conclusion of law, and judgment was entered in December 2001. The district court also ordered that the record include the "arbitration" exhibits. Appellants filed a notice of appeal with this court. We issued an order directing the parties to address whether the district court's order and judgment is appealable.

## ISSUES

I. May this court review a decision where the parties stipulated that the resulting judgment will be subject to appellate review but did not timely request a trial within 20 days after the filing of an award titled "arbitration award" as provided in Minn. R. Gen. Prac. 114.09(d)(2)?

II. Did the consensual special magistrate err in concluding that the 1998/1999 policy was not continually renewed beginning with the 1987 policy?

III. Did the consensual special magistrate err in finding that the in-sured attorney's misrepresentation increased respondent's risk of loss?

## ANALYSIS

### I. Appealability

■ Before oral arguments, we directed the parties to submit legal memoranda addressing whether this court has jurisdiction to decide this case. We questioned whether we had jurisdiction to review an arbitration award where the parties stipulated that the judgment would be subject to appellate review but did not timely request a trial within 20 days after the filing of an arbitration award as provided in Minn. R. Gen. Prac. 114.09(d).

■ By way of background, the parties agreed that a retired justice would hear the case. The parties' agreement provided that

[t]he parties reserve the right to have the judgment of the arbitrator entered by the district court. The parties reserve the right to appeal from any factual or legal decision made by the arbitrator.

The parties' agreement is titled "Voluntary Binding Arbitration," and the decision is titled "Arbitration Decision." The record shows that the parties and district court judge consistently refer to the retired justice as the "arbitrator." The record does not contain any district court order appointing an arbitrator, referee, consensual special magistrate, or other permitted designation by name. However, both parties argued to this court that the case is appealable and that Minn. R. Gen. Prac. 114.09(d) does not apply. Both parties claim this is not the traditional arbitrator's decision to which various arbitration and mediation rules apply. The parties assert that the retired justice was acting as a consensual special magistrate ("CSM") un-

der Minn. R. Gen. Prac. 114.02(a)(2) and Minn.Stat. § 484.76, subd. 2 (2000). The record reflects a like understanding on the part of the district court and the retired justice.

Minn. R. Gen. Prac. 114.02 sets forth various forms of alternative dispute resolution. A "consensual special magistrate" is specifically provided for under that rule:

Consensual Special Magistrate. A forum in which a dispute is presented to a neutral third party in the same manner as a civil lawsuit is presented to a judge. This process is binding and includes the right of appeal.

Minn. R. Gen. Prac. 114.02(a)(2); *see also* Minn.Stat. § 484.76, subd. 2 (stating statewide alternative dispute resolution methods must include consensual special magistrates "including retired judges and qualified attorneys to serve as special magistrates for binding proceedings with a right of appeal"). Minn.Stat. § 484.74, subd. 2a (2000)[2] provides guidance as to the role and procedure when using a consensual special magistrate:

In addition to the alternatives under subdivision 1, in cases where the amount in controversy exceeds $50,000, and with the consent of all of the parties, the presiding judge may submit to the parties a list of retired judges or qualified attorneys who are available to serve as special magistrates for binding proceedings under this subdivision. If the parties agree on selection of a person from the list, the presiding judge may appoint, by order, the person as a special magistrate. The special magistrate may preside over any pretrial and trial matters as determined by the presiding

judge. * * * The presiding judge may adopt the rulings and findings of the special magistrate and the results of any jury trial without modification. The parties have a right to appeal from the presiding judge's rulings and findings and from the jury verdict as in other civil matters.

Pursuant to this statute, the presiding district court judge adopts the rulings and the findings of the consensual special magistrate and/or any jury trial without modification. The statute grants the court discretion to appoint, by order, a consensual special magistrate. Here, the record does not contain an order specifically appointing a consensual special magistrate by name. However, the record shows that the parties, the district court judge, and the retired justice were all in agreement that the district court would adopt the retired justice's findings, and then both sides would be free to appeal directly to this court. Thus, we honor substance over form. It would be judicially inefficient, would help no party, and would not further any interest of the court system to say, "oops," the magic words "consensual special magistrate" were not spelled out, and even though we know that was the intent of all the parties, we are going to consider it "an arbitration" because that phrase was used in passing. We easily conclude from the record that the retired justice was acting as a consensual special magistrate pursuant to Minn. R. Gen. Prac. 114.02(a)(2).

This case emphasizes the importance of specifically designating a consensual special magistrate by name when that is the intent of the parties. Various dispute resolution procedures exist, including refer-

---

**2.** We recognize that Minn.Stat. § 484.74 (2000) only applies to the second and fourth judicial districts where the amount in controversy exceeds $50,000, and the statute is therefore not intended as a statewide directive in utilizing consensual special magistrates.

*See* Minn.Stat. § 484.74, subd. 4. But to avoid any unintended consequences of failing to properly classify a consensual special magistrate, parties and courts may find it useful to look to Minn.Stat. § 484.74 for guidance.

ees, arbitrators, CSMs, etc. *See* Minn. R. Civ. P. 53.01 (describing procedure for appointing a referee); Minn. R. Gen. P. 114.02 (describing various alternative dispute resolution methods). *But,* the various dispute resolution procedures have different consequences. If the retired justice in this case had formally acted as an arbitrator, Minn. R. Gen. Prac. 114.09 would preclude appellate review. Minn. R. Gen. Prac. 114.09(e) provides that a party may request a trial within 20 days after the arbitrator files the decision with the court, but this "20–day period shall not be extended." The rule provides that if no party has requested a trial within 20 days after the filing of the award, "the court administrator shall enter the decision as a judgment" and the judgment "shall have the same force and effect as * * * a judgment in a civil action or proceeding, *except that it is not subject to appeal." Id.* (emphasis added). A review of the record reveals that no party requested a trial within 20 days after the filing of the arbitration award. Accordingly, if Minn. R. Gen. Prac. 114.09 applied in this case, the judgment is "not subject to appeal," and we would have to dismiss the appeal. That is exactly what both parties, the district court, and the special magistrate did not want, did not intend, and, thus, we do not arbitrarily impose a dismissal.

The record is clear that the parties did not intend a referee. Under Minn. R. Civ. P. 53.02, the court may appoint a referee, but "a reference to a referee shall be the exception and not the rule," and

> [i]n actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only

upon a showing that some exceptional condition requires it.

The record shows that neither the parties nor the district court ever referred to the retired justice as a referee. The record does not contain a district court order appointing a referee. *See* Minn. R. Civ. P. 53.01 (specifying what district court should state in order appointing referee). Because courts routinely interpret insurance contracts, no exceptional conditions warrant appointment of a referee on the facts of this case.

■ Under Minn. R. Gen. Prac. 114.09 (arbitration) or Minn. R. Civ. P. 53.01 (referee), what the parties, the district court, and the CSM intended to do could not be done. Accordingly, we emphasis again the importance of using the term "consensual special magistrate" and directly referring to Minn. R. Gen. Prac. 114.02(a)(2) when using this form of alternative dispute resolution. In its order adopting the retired justice's findings and conclusions, the district court should have incorporated a specific reference to Minn. R. Gen. Prac. 114.02(a)(2) and used the term "consensual special magistrate." [3]

We encourage district courts to appoint the CSM by order. When a district court formally designates a CSM, what the parties intended, and what we allowed here today, happens. The presiding district court judge may adopt the findings and conclusions of the CSM without modification, and the parties have a right of direct appeal as in other civil matters. That is precisely what the parties meant to negotiate for the procedural route in this case. We find that they did, even though the language was loose at points and referenced limited references to "arbitration." Put another way, it looked like a duck, but

---

**3.** We note our approval of the district court's order incorporating the exhibits considered by the CSM into the district court file.

it did not quack like a duck and did not walk like a duck, and the parties do not want us to call it a duck (arbitration), so we are going to call it a "consensual special magistrate."

We recognize that the record contained references to the "arbitrator" and "arbitration." If either party argued this was not a CSM situation, but rather arbitration, the party claiming arbitration would have a strong argument. We need not reach that issue because the parties, the district court, and the magistrate understood this to be a CSM situation and acted accordingly. What we point out is the probable dismissal by this court, had one party argued that arbitration was meant. The term arbitration was used.

We give a strong caution to future litigants to use the proper terminology and to establish the use of a CSM (when that is what is intended) firmly in the record. All ADRs are all ADRs. But all ADRs have differences in setup, consequences, and appealability. After parties to a lawsuit carefully make a choice of a forum, carefully be sure you are in that forum.

## II. Continuously Renewed

Appellants argue the district court, who adopted the CSM's decision, erred in concluding the 1994 policy was not a continuous renewal of the 1987 policy.

This court reviews insurance coverage issues de novo. *Health Personnel v. Peterson*, 629 N.W.2d 132, 134 (Minn.App. 2001), *review denied* (Minn. Aug. 22, 2001). But the district court's "underlying findings of fact will not be disturbed unless clearly erroneous, giving due deference to the [fact finder's] opportunity to judge the credibility of the witnesses." *Merchants Nat. Bank of Winona v. Transamerica Ins. Co.*, 408 N.W.2d 651, 653 (Minn.App. 1987), *review denied* (Minn. Sept. 30, 1987) (citation omitted).

"General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). This court must give clear and unambiguous language "its usual and accepted meaning." *Id.* (quotation omitted). An appellate court construes coverage exclusions narrowly and the insurance company bears the burden of proving that the policy exclusion bars coverage. *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992).

The policy provides coverage for claims

resulting from any act, error or omission which occurred prior to the POLICY PERIOD * * * *if the insured had no knowledge of facts which could reasonably support a CLAIM at the effective date of the first policy written and continuously renewed.*

(Emphasis added). Appellants assert that the "first policy written and continuously renewed" was the 1987 policy, and, because Schneider did not have knowledge of appellants' claim in 1987, the policy covers appellants' claim. We disagree.

Respondent insured Schneider under a "claims-made" policy.

A "claims-made" policy requires that, for coverage to attach, the insurer must be given notice of the claim during the policy period. Under an "occurrence" policy, by contrast, for coverage to attach the negligent *act* must occur during the policy period.

*N.K.K. by Knudson v. St. Paul Fire & Marine Ins. Co.*, 555 N.W.2d 21, 25 (Minn. App.1996) *review denied* (Dec. 23, 1996). Under the terms of the policy, the "policy period" is from the effective date to the expiration date, and the "effective date" is the renewal date, not the date of the first policy.

Although the policy's language is not free from ambiguity, the record shows the 1987 was not the first policy written and continuously renewed. Respondent did provide continuous coverage for Schneider beginning in August 1987 and continuing through September 1999, but the coverage was provided under two distinct policies. The 1984 policy and subsequent renewals (up to the 1994 cancellation) were numbered 3271–01 to 3271–08, and the policies underwent three name changes involving predecessor firm designations. Rather than merely changing the name on the 1987 policy, the 1987 was cancelled, and respondent issued a new policy, effective September 15, 1994. The insured name listed on the new policy was "Ronald H. Schneider, P.A.," and the new policy number was 4413–01. Unlike previous renewals, the September 15, 1994, policy did not come into existence at the time the policy was scheduled for renewal. In fact, the 1987 policy was renewed on August 27, 1994, less than a month before the new policy became effective. This is not a situation where respondent issued a policy on the scheduled renewal date of August 27, and the policy just so happened to have a different policy number. That would be a case for another day. Here, a major event occurred: the named insured disbanded, the policy was cancelled shortly after its effective date, and a new policy was issued. If the attorney had cancelled the 1987 policy with respondent and chosen a new insurer, there would be no doubt that the policy was a new policy and not continually renewed. The fact that Schneider chose to obtain a new policy from respondent does not alter our analysis. Accordingly, we conclude the first policy in effect and continuously renewed when the claim was disclosed was the September 15, 1994, policy.

The CSM made a finding, which the district court adopted, that on September 15, 1994, Schneider had knowledge of facts that could reasonably support a claim.

This finding is supported by the record and is not clearly erroneous. In the underlying action resulting in the malpractice claim, the district court found that the fraud had not been tried by the express or implied consent of the parties on September 22, 1992. And on June 24, 1994, several months before the 1994 policy's effective date of September 15, 1994, the supreme court upheld the district court's decision.

Because the first policy written and continuously renewed was the September 15, 1994, policy, the record supports the district court's finding that Schneider had knowledge of facts that could reasonably support a claim on September 15, 1994. The policy only covers claims occurring prior to the policy period if the insured had no knowledge of facts that could reasonably support a claim at the effective date of the policy. We conclude respondent's policy in effect at the time of the disclosure of the claim does not provide coverage for appellants' claim. Accordingly, we affirm the district court.

### III.

■ Appellants assert that the district court erred by adopting the CSM's conclusion that Schneider's misrepresentation increased respondent's risk of loss and thus that the policy did not provide coverage pursuant to Minn.Stat. § 60A.08, subd. 9 (2000). Because we have concluded that coverage is excluded under the policy, we need not address this issue. We note, however, whether a misrepresentation increased the risk of loss is a question for the trier of fact "unless the evidence is conclusive one way or the other." *Transamerican Ins. Co. v. Austin Farm Center, Inc.*, 354 N.W.2d 503, 506 (Minn.App.1984) (quoting *Craigmile v. Sorenson*, 248 Minn. 286, 295, 80 N.W.2d 45, 51 (1956)). Our review of the record shows that this finding is not clearly erroneous.

## DECISION

The retired justice was acting as a consensual special magistrate and his decision, adopted by the district court, is reviewable by this court. The district court, in adopting the decision of the consensual special magistrate, correctly concluded that the policy in effect at the time of Schneider's disclosure of the claim does not provide coverage for appellants' claim.

**Affirmed.**