Craig JOHANNS, et al., Respondents,

v.

MINNESOTA MOBILE STORAGE, INC., Appellant.

No. A05–1578.

Court of Appeals of Minnesota.

Aug. 15, 2006.

Alex W. Russell, Evening & Weekend Law Offices, St. Paul, MN, for respondents.

Brian A. Wood, William L. Davidson, Sarah Morris, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; WRIGHT, Judge; and WORKE, Judge.

## OPINION

HUDSON, Judge.

On appeal from a district court decision after a jury's determination of damages on a special verdict, appellant self-storage facility argues that the district court erred in failing to enforce the unambiguous damage limitation in the parties' rental agreement under the Minnesota Liens on Personal Property in Self-Service Storage Act, Minn.Stat. §§ 514.970–.979 (2004). In a notice of review, respondents contend that in the event this court holds in appellant's favor on those arguments, the matter must be remanded so that the district court can determine whether the exculpatory clause is unenforceable because of appellant's willful violation of law. Respondents also contend that the district court's grant of summary judgment on several other claims was erroneous. Because (a) the parties' rental agreement is an unambiguous, valid partial exculpatory contract; (b) the language of the act is unambiguous and permits rental agreements that provide limited liability for, but not total exemption from, damages caused by the owner's negligence; (c) the district court did not reach the issue of whether the owner's acts were intentional, which would make the exculpatory clause unenforceable due to a willful violation of law; and (d) respondents failed to present specific legal arguments to support their claim that the district court erred in granting summary judgment on several other claims, we reverse and remand.

## FACTS

Respondents were moving and needed to temporarily store some of their personal property. After seeing a television commercial for PODS, self-contained storage units that could be brought to the custom-

er's address for packing and then transported to a warehouse for storage, respondent Craig Johanns called the 800 number listed in the advertisement. He arranged to lease a unit and gave the operator his current address, telephone number, and credit card information. As he later learned, he had spoken with an employee of PODS, Inc. Appellant is a franchisee of PODS, which does the accounting, builds the storage units, and provides supplies for its franchisees. On November 10, 2001, the storage unit was delivered to respondents' house. Respondent Mary Johanns signed a rental agreement with appellant to lease the unit for $196.97 per month, and paid for the first month by check. The agreement addressed the owner's liability for negligence, limited damages that respondents could recover for negligence to $5,000, and, among other provisions, included an exception to the exculpatory provision for willful violations of law. Respondents packed the unit, and appellant brought the unit to its storage facility in late November 2001.

Neither PODS nor appellant received any further payments from respondents. Appellant, who had a statutory lien under Minn.Stat. § 514.972 (2004) against the personal property stored in the facility for unpaid rent, eventually enforced the lien and sold respondents' property at an auction for $1,305.

When respondents learned of the sale, they sued appellant on a variety of claims. The district court granted summary judgment on most of the claims, but allowed the breach-of-contract and bailment claims to proceed to trial. At the trial, the parties presented evidence, in relevant part, regarding the circumstances concerning the respondents' failure to make payments, notices allegedly sent to respondents, and the auction. Craig Johanns believed that their payments were being automatically made by credit card. Neither Craig nor Mary Johanns recalled receiving any correspondence from appellant or PODS after the storage unit was picked up until March 2002, when Craig received a letter informing him that the storage unit containing their belongings had been sold at auction on February 21, 2002.

Jacqelin Consentino, the vice president of legal-risk management at PODS, testified that PODS had complied with all statutory requirements in Minnesota to enforce the lien against respondents. On cross-examination, however, a number of discrepancies and problems of proof were revealed.

A jury answered two questions on a special verdict form and determined in relevant part that respondents' damages were $67,750. The district court then resolved most of the remaining issues. It ruled as a matter of law that appellant failed to show that it complied with the procedures for enforcing the lien pursuant to Minn.Stat. § 514.973 (2004). Next, it determined that the $5,000 limit of damages in the contract was invalid under Minn.Stat. §§ 514.976, subd. 4, 514.978 (2004) and awarded damages of $67,750 as found by the jury. Finally, it noted, but did not resolve, the issue of whether appellant acted intentionally such that the exculpatory clause could not be enforced by appellant. This appeal follows.

## ISSUES

I. Is a provision in a rental agreement for self-service storage that limits damages to $5,000 an unambiguous, valid exculpatory clause, and, if so, is the clause unenforceable due to willful violation of law?

II. Does Minn.Stat. § 514.975 (2004) bar a rental agreement that provides limited liability for, but not total exemption from, damages due to the negligence of the owner of the self-service storage facility?

III. Did the district court err in granting summary judgment on respondents' other claims?

## ANALYSIS

### I

The first issue we address concerns the parties' rental agreement in which respondents initialed a provision acknowledging that appellant's liability is limited to $5,000.[1] The district court, although focusing on the statutory analysis addressed in the second section of this opinion, stated in a footnote in its order that appellant arguably acted intentionally in selling respondents' property, which would render the exculpatory clause unenforceable. Appellant argues that the exculpatory provision is valid, while respondents contend that the contract paragraph at issue, as well as the rental agreement as a whole, is ambiguous and is not a valid exculpatory clause. Further, respondents contend that if the provision is deemed valid, the matter must be remanded to allow the district court to rule on whether appellant acted intentionally, rendering the exculpatory clause unenforceable.

■■■ We first address the validity of the exculpatory provision. "[P]arties to a contract may, without violation of public policy, protect themselves against liability resulting from their own negligence." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 922–23 (Minn.1982) (footnote omitted). The supreme court has "recognized the validity of exculpatory clauses in certain circumstances [although] they are not favored in the law." *Id.* at 923. They are "strictly construed against the benefited party." *Id.* "If the clause is either ambiguous in scope or purports to release the

benefited party from liability for intentional, willful or wanton acts, it will not be enforced." *Id.*

Interpretation of a written contract is a question of law reviewed de novo. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn.2003). "[C]ourts are to ascertain and give effect to the intent of the parties." *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn.1979). Whether a contract is ambiguous is a question of law. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). A contract is ambiguous if it is reasonably susceptible to more than one meaning. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn.1990). If so, courts may use extrinsic evidence to construe the contract. *Blattner*, 322 N.W.2d at 321.

■■■ The provisions of paragraph 6, labeled "Limitation of Lessor's Liability; Indemnity," which contains the $5,000 limitation at issue here, provides as follows:

Lessor and Lessor's Agents will have no responsibility to Tenant or to any other person for any loss, liability claim, expense, damage to property or injury to persons ("Loss") from any cause, including, without limitation, Lessor and Lessor's Agents active or passive acts, omissions, negligence or conversion, *unless the Loss is directly caused by Lessor's fraud, willful injury or willful violation of law.* Tenant shall indemnify and hold Lessor and Lessor's Agents harmless from any loss incurred by Lessor or Lessor's Agents in any way arising out of Tenant's use of the Unit or Project. *Tenant agrees that Lessor's and Lessor's Agents total responsibility for any Loss from any cause whatsoever will*

1. Appellant does not challenge the district court's determination that it failed to comply with Minn.Stat. § 514.973 (2004) in enforcing its lien or the jury's determination as to the value of the respondents' property that had been stored with appellant.

*not exceed a total of $5,000.* By placing Initials Here—, Tenant acknowledges that he understands and agrees to the provisions of this paragraph. *Regardless of anything stated in this Section 6 to the contrary and as required by Minnesota Statute Section 514.976* [sic], *Lessor is not exempt from liability for damage to Tenant's personal property caused by Lessor's negligence.*

(Emphasis added.) One of the respondents initialed the paragraph.

Appellant contends that the damage limitation, read as a whole and in the context of the entire contract, indicates the intent of the parties to limit damages for negligence to $5,000 and is not susceptible to more than this one reasonable interpretation. Respondents contend that the language of the contract is ambiguous because, in some places, it is completely exculpatory, while in paragraph 6, there is a liability limit of $5,000. Further, they note that paragraph 6 refers to an incorrect statutory section. Finally, some sections of the contract do not include an exclusion from the release of liability for intentional, willful, or wanton acts; further, paragraph 6 does not specifically exclude liability for intentional acts. They argue that the agreement illegally limits all claims and, at the very least, contradicts itself.

Our review of paragraph 6 and the remainder of the rental agreement reveals no ambiguity as to the limit of appellant's liability; under its plain language, appellant's liability for negligence is limited to $5,000. Further, this paragraph explicitly provides an exception for "fraud, willful injury, or willful violation of law." Willful acts include intentional acts. *See Black's Law Dictionary* 1593 (7th ed.1999) (defining "willful" as "voluntary and intentional"). Therefore, respondents' claim that the contract improperly releases the bene-

fited party from liability fails; the argument that the rental agreement should not be enforced due to ambiguity or improper scope of the exculpatory clause has no merit.

■■■ Next, we address whether enforcement of the exculpatory clause will contravene public policy. *Schlobohm,* 326 N.W.2d at 923. On this issue, a two-prong test is applied.

> Before enforcing an exculpatory clause, both prongs of the test are examined, to-wit: (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision) ... *and* (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service).

*Id.* (citations omitted). In addressing the second prong, "courts consider whether it is the type [of service] generally thought suitable for public regulation." *Id.* at 925. These include "common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers and services involving extra-hazardous activities." *Id.* (footnotes omitted). Courts also consider whether the party "seeking exoneration offered services of great importance to the public, which were a practical necessity for some members of the public." *Id.* at 926; *see Yang v. Voyagaire Houseboats, Inc.,* 701 N.W.2d 783, 790–91 (Minn.2005) (holding that where company providing houseboat acted as innkeeper providing regulated public service, with duty to protect guests, exculpatory clause not enforceable).

Respondents contend that because self-storage companies may foreclose on the lien and auction property without the involvement of the sheriff, they are perform-

ing public duties for which exculpatory clauses are not appropriate. *See* Minn. Stat. § 514.973 (providing self-service storage lien must be enforced in same manner as warehouse's liens pursuant to Minn. Stat. § 336.7–210). While self-service storage facilities are regulated, appellant was not required to accept respondents as patrons, and respondents were not required to assent to unreasonable terms or give up a valuable legal right as a condition precedent. *See Schlobohm,* 326 N.W.2d at 926. As appellant correctly notes, respondents offered no evidence establishing that appellant precluded them from negotiating the terms of the rental agreement. Further, self-storage facilities are widely available, and respondents make no claims to the contrary. Assuming the damage limitation was unacceptable to respondents, they could have selected a different facility. Thus, there was no element of compulsion or public necessity. *See id.; Malecha v. St. Croix Valley Skydiving Club, Inc.,* 392 N.W.2d 727, 730 (Minn.App.1986) (declining to find a disparity in bargaining power because skydiving services were available elsewhere in the area and despite the fact that appellant had not been provided with waiver forms until just before the jump), *review denied* (Minn. Oct. 29, 1986). Consequently, the exculpatory clause did not violate public policy, and it is enforceable.

■ Finally, we address respondents' argument that, in the event this court upholds the validity of the partial exculpatory clause, this appeal must be remanded to the district court to resolve the issue of whether the clause is unenforceable because appellant acted intentionally. The district court found that appellant failed to comply with Minn.Stat. § 514.973 (2004), and appellant does not challenge this determination. But the court also stated that appellant arguably acted intentionally in selling respondents' property but did not make a definitive finding. Appellant contends that there is no evidence it acted intentionally and further asserts that because it did not proceed under the exculpatory clause, respondents' argument is irrelevant.

■ As discussed above, the section of the rental agreement that is in dispute limits appellant's liability for damages to $5,000, "unless the Loss is directly caused by Lessor's fraud, willful injury or willful violation of law." This exception is consistent with the rule of law that a party may not release itself from liability for wanton and willful conduct. *Beehner v. Cragun Corp.,* 636 N.W.2d 821, 829 (Minn.App. 2001), *review denied* (Minn. Feb. 28, 2002); *see Arrowhead Elec. Coop., Inc. v. LTV Steel Mining Co.,* 568 N.W.2d 875, 877 (Minn.App.1997) (remanding to resolve factual issue under exculpatory clause of whether damage was caused by willful acts).

The exculpatory clause provides an exception for, among other things, loss that is directly caused by appellant's willful violation of law. Here, respondents asserted that appellant's failure to follow Minnesota law on numerous occasions in connection with the rental agreement provision constitutes willful conduct under which the exculpatory clause is unenforceable. Willful conduct includes "a disregard for governing statutes and an indifference to their requirements, or a careless disregard of statutory requirements." *In re Henry Youth Hockey Ass'n,* 511 N.W.2d 452, 456 (Minn.App.1994) (addressing whether willful violation of laws and board rules warrants revocation of gambling license), *modified in part on other grounds,* 559 N.W.2d 410 (Minn.1994).

Appellant contends that there is no evidence it acted willfully. But the district court stated that "[a]rguably [appellant]

acted intentionally in selling [respondents'] property." Our review of the record demonstrates that the evidence presented a fact issue that must be resolved by the district court.

As discussed above, an owner may enforce its lien using the procedures set out in Minn.Stat. § 336.7–210 (2004). Under this provision, appellant was required to give notice to respondents, including "an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods will be advertised for sale and sold by auction at a specified time and place." Minn.Stat. § 336.7–210(b)(1), (2) (2004).

Respondents testified that they did not receive any such notice, even though the PODS attorney testified that respondents had provided PODS with their new address. The PODS attorney was unable to find its copy of the notice allegedly sent to respondents and noted that the company has been archiving and shredding old documents. Computer records did not show that the notice of default had been sent, although they indicated a notice of auction had been sent.

Next, after the expiration of the ten-day period in the notice of default, the owner must publish an advertisement of sale once a week for two consecutive weeks, which "must include a description of the goods, the name of the person on whose account the goods are being held, and the time and place of the sale. The sale must take place at least 15 days after the first publication." Minn.Stat. § 336.7–210(b)(5) (2004). Problems also arose in showing these requirements had been met. First, the undated advertisement listed 12 individuals whose storage units were being sold, with only one general description of goods; second, Craig Johanns's name was incorrectly listed as "Greg Johanns"; and third, according to the evidence produced by the PODS attorney, a February 7, 2002 data entry indicated that the notice of the time and date of the auction was sent to the customer, and the auction was held on February 21, 2002.

In addition, testimony and evidence indicated PODS tried to contact respondents by telephone several times, but the listed numbers had been disconnected. As the district court noted, on December 21, 2001, respondent talked to PODS to create a new PIN number. One minute later PODS placed a past-due call to respondent to notify respondents that their account was past due, but, inexplicably, was unable to make the call because the number had been disconnected. Further, there was disputed testimony regarding whether appellant was supposed to bill respondents' credit card rather than waiting for respondents' monthly check to arrive.

From the disputed evidence, we agree with the district court that there is at least a fact question as to whether PODS engaged in willful conduct that would make the exculpatory clause and its $5,000 limitation unenforceable.

Appellant also contends that the issue is irrelevant because it is not asserting the exculpatory defense on appeal. But appellant is clearly relying on the exculpatory provision that provides it is liable only for $5,000 in damages. As discussed above, this exculpatory provision is valid because, among other things, it does not purport to release appellant from liability for willful injury. Thus, appellant's argument has no merit.

## II

■ The next issue addressed is the interpretation of the Minnesota Liens on

Personal Property in Self–Service Storage Act, Minn.Stat. §§ 514.970–.979 (2004). Specifically, we must resolve the validity of the parties' rental agreement under the act, and whether it may partially limit, but not totally exempt, the owner's liability for damages caused by its negligence. A self-storage facility is real property "designed and used only for renting or leasing individual storage space in [a] facility" where the occupants have access to the facility only to store and remove their personal property. Minn.Stat. § 514.971, subd. 2(1) (2004). The owner of the facility and the occupant, i.e., the person who rents the storage space, enter into a written rental agreement establishing the terms and conditions of use. *Id.*, subds. 4, 5. "The owner and occupant may not waive or modify the provisions" of the act. Minn.Stat. § 514.978 (2004).

The act requires that the rental agreement disclose the owner's lien rights in the event the occupant does not pay rent, as well as "the extent and the limits of insurance carried by the owner covering the occupant's personal property stored in the leased premises." Minn.Stat. § 514.975 (2004). This section also contains the sentence that gives rise to the controversy in this case: "A rental agreement may not exempt an owner from liability for damages to an occupant's personal property caused by the owner's negligence." *Id.* The issue presented here is whether the owner may partially, rather than totally, exempt its liability for damages caused by its negligence.

Statutory interpretation is a question of law reviewed de novo. *Pietsch v. Minn. Bd. of Chiropractic Exam'rs,* 683 N.W.2d 303, 306 (Minn.2004). When interpreting a statute, courts will first examine "whether the language of the statute, on its face, is clear or ambiguous." *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). Words and phrases are construed according to their "common and approved usage," unless they are technical words that have acquired a special meaning or are defined in the chapter. Minn.Stat. § 645.08(1) (2004). "If the words of the statute are 'clear and free from all ambiguity,' further construction is neither necessary nor permitted." *Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 736 (Minn.2000) (citation omitted).

The district court recognized that the self-service storage law was silent as to whether damages could be partially exempted. It noted that Minn.Stat. § 514.975 prohibits an owner from exempting itself from its own negligence and that appellant may have acted negligently in enforcing its lien. The court ruled that permitting the owner to limit damages would modify the law and eviscerate its purpose of carefully regulating foreclosure of the lien under the act to vindicate the due-process rights of the consumer.

In resolving the issue, we initially consider the plain language of the statute. Appellant argues that the plain language of the statute does not prohibit the parties from voluntarily agreeing to limit damages, while respondents contend the language is ambiguous and does not resolve the issue, and that the statutory prohibition includes partial exemption from liability.

The statute does not define "exempt." *See* Minn.Stat. § 514.971 (providing definitions for some terms used in act). But as appellant argues, when the legislature sought to preclude contract provisions that partially limit the extent of liability, it has done so explicitly. For example, Minn.

Stat. § 300.64, subd. 4 (2004), provides that "the certificate [of incorporation] shall not eliminate or limit the liability of a director" for listed acts and omissions. *Id.* Other statutory provisions similarly provide that directors' liability for certain breaches, acts, or omissions shall not be eliminated or limited. Minn.Stat. §§ 67A.17, subd. 3 (2004) (township mutual fire insurance companies); 302A.251, subd. 4 (2004) (business corporations); 308B.465, subd. 2 (2004) (cooperative associations). Respondents cite a reference to "partly exempt" in Minn.Stat. § 297A.81, subd. 2(c) (2004).

Again, we must rely on the plain language of the statute, which prohibits an agreement from exempting an owner from liability for negligence. Had the legislature intended to prohibit the agreements from partially exempting or limiting an owner's liability, it would have done so. Consequently, we conclude that the parties' agreement to limit damages to $5,000 is consistent with section 514.975 because it does not release or exempt appellant from *all* liability, but simply partially exempts its potential exposure to $5,000. Further, knowing that appellant's liability was limited, respondents could have purchased property insurance covering any claimed value in excess of $5,000 but chose not to do so. While the district court in a footnote found it doubtful that this type of insurance would provide coverage in these circumstances, without a policy before the court, the issue of whether insurance would cover the present situation cannot be resolved. *See, e.g., Lathers v. U–Haul Co. of La.,* 875 So.2d 839, 842 (La.App. 5 Cir.2004) (addressing whether insurance covering contents of storage unit insured loss, but concluding exclusion for theft loss not evidenced by visible signs of forced entry applied and no coverage available), *writ denied,* 883 So.2d 1059 (La.2004).

This ruling is consistent with the fact that the owner of the self-storage unit is not an insurer of the goods stored there. A paragraph initialed by one of the respondents states that tenant agrees that if the aggregate value of the property exceeds $5,000, the tenant will show proof of insurance. Further, it provides that the tenant agrees that the space is not suitable for storage of heirlooms or irreplaceable property. Another paragraph, although not initialed by respondents, states that property is stored at the tenant's risk, that it is the tenant's sole responsibility to obtain insurance, that the lessor will not obtain insurance for the contents, and that the tenant may obtain insurance from the lessor. *See* Minn.Stat. § 514.975 (providing rental agreement must provide extent and limit of insurance carried by owner covering personal property stored in facility). In the event that it is determined that respondents' loss arose from appellant's negligence rather than its willful acts, the contract limited its liability to $5,000, and the respondents arguably could have obtained insurance to cover their losses. Finally, should the legislature choose to change the statutory scheme, it is well within its powers to do so.

In conclusion, because the plain language of the statute prohibits an agreement totally exempting liability, but does not prohibit a partial exemption from liability, a rental agreement may partially exempt the liability of the owner for negligence, although it may not totally exempt it.

### III

■ Finally, in the alternative, respondents raise several issues. Respondents have waived their challenge to dismissal of these claims by failing to specifically present legal argument or authority to support their contention that the district court im-

properly dismissed them. *See* Minn. R. Civ.App. P. 128.02(d); *City of Cloquet v. Cloquet Sand & Gravel, Inc.*, 312 Minn. 277, 279 n. 1, 251 N.W.2d 642, 644 n. 1 (1977) (stating that where a party provided minimal explanation of an issue and cites no supporting authority, issue will not be considered). We therefore decline to address them.

## DECISION

The decision of the district court ruling that neither the statute nor the rental agreement allow a partial exemption for appellant from liability for damages caused by negligence is reversed, and the matter is remanded for a determination of whether respondents' loss was directly caused by appellant's intentional acts.

**Reversed and remanded.**