### In re PEER REVIEW ACTION.

No. A07–0813.

Court of Appeals of Minnesota.

June 3, 2008.

Rebecca Egge Moos, Charles E. Lundberg, Susan E. Gustad, Bassford Remele, P.A., and Marianne D. Short, Dorsey &

Whitney, L.L.P., Minneapolis, MN, for appellants.

Eric J. Magnuson, Briggs & Morgan, P.A., and Margo Struthers, David L. Jordan–Huffman, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for respondent.

Carolin J. Nearing, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, MN, for amici curiae Minnesota Hospital Association, Mayo Health System, Regions Hospital, HealthEast, Children's Health Care, and Park Nicollet Health Services.

Considered and decided by
TOUSSAINT, Chief Judge; WRIGHT,
Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge *.

Hospital appeals from a temporary injunction preventing it from professionally disciplining Physician. Hospital conducted a peer-review inquiry of Physician's disruptive behavior, resulting in a 120–day suspension of Physician's privileges and a post-suspension probation. Physician sued to enjoin Hospital from disciplining him. Hospital sought to dismiss the action, claiming immunity under federal and state law. The district court granted the temporary injunction after determining that Hospital's peer-review action leading to discipline of Physician was taken in malice and, therefore, Hospital was not entitled to immunity. Hospital argues on appeal that (1) the factual findings do not support the legal conclusion that Hospital's discipline of Physician was motivated by malice, and (2) the suit is barred because Physician contractually agreed not to sue Hospital for its peer-review actions. Because the district court's factual findings are sufficient to support the conclusion that Hospi-

tal's discipline of Physician was motivated by malice, and because a contract cannot limit liability for malicious acts, we affirm.

## FACTS

This case arises from a hospital's disciplinary action against a physician. The events that led to Physician being professionally disciplined began in February 2005, when Hospital's Vice President for Medical Services (VPMS) began investigating Physician's behavior.

The VPMS met with members of Hospital's leadership on March 15, 2005. He reported that Physician was disruptive and that discipline might be necessary. The VPMS had not spoken to Physician about Physician's alleged disruptive behavior but he told the other hospital leaders that he had done so. Hospital's president, the chief of its medical staff, and another member of Hospital's leadership wrote a letter dated July 12, 2005, to Hospital's Credentials Committee alleging disruptive behavior by Physician and requesting the committee to begin a peer-review investigation of Physician.

The VPMS's meeting with Hospital's leadership did not conform to Hospital's policy. Hospital's Disruptive/Abusive Behavior (DAB) Policy sets out a detailed process for communication among administrators, medical-staff leadership, and physicians regarding behavioral conflict. The DAB policy entitles a physician under review to notice of any allegedly disruptive behavior, and an opportunity to modify that behavior and develop conflict-resolution skills. Under Hospital's Credentials and Hearing (Hearing) Policy, when a complaint is filed, the chief of staff, department chief, patient-care-quality committee chair, or the hospital administrator must

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

conduct an inquiry, including discussing the incident with the subject-physician. Hospital did not give Physician an opportunity to modify his behavior and develop conflict-resolution skills. Neither the VPMS nor the authors of the July 12 letter had discussed Physician's behavior with him, as required by the Hearing policy.

The credentials committee sent a letter to Physician on August 3, 2005, notifying him that the committee was conducting an investigation. The letter addressed Physician's disruptive behavior but named none of Physician's accusers and listed the date of only one incident. It did state that Physician, in various surgeries, had been uncompromising with an anesthesiologist, lost his temper, used profane language, and acted disruptively. The letter invited Physician's response to these accusations. After Physician asked for more details, the credentials committee sent him another letter elaborating on the specified events.

On September 7, 2005, Physician met with the credentials committee. He denied the allegations and generally denied that he had engaged in any inappropriate behavior. Physician pointed out that the committee had not followed the DAB policy, which calls for early and gradually increasing intervention. Physician complained that he had not previously been made aware of the allegations and that it was unfair to discipline him for them now.

The credentials committee concluded that Physician's improper conduct had been established and that the improper conduct showed a pattern of unacceptable behavior. To discipline Physician, the committee recommended suspending his privileges for 120 days and requiring him to undergo anger-management training, followed by probation for one year.

On September 12, 2005, Hospital's Medical Staff Executive Committee reviewed the credentials committee's recommenda-tion. The medical staff executive committee agreed with the recommendation for discipline but suggested increasing the suspension to 180 days and the probation to two years. Physician appealed, triggering a procedural-review hearing under the Hearing policy.

On January 12 and 14, 2006, a procedural-review hearing was conducted. On January 24, the hearing panel recommended suspending Physician for 180 days followed by a two-year probation. The Hearing policy requires a hearing panel to produce a written report that includes a statement of the basis for its conclusions. Instead, the hearing panel's one-page written report simply stated that it found "overwhelming evidence" that Physician engaged in "serious disruptive, demeaning and counterproductive behavior." The report did not describe the behavior or specify the overwhelming evidence. The report also stated that Physician "failed ... to take any responsibility for his poor behavior." And it stated that the panel's decision was "based on behavioral issues," but it did not explain what those issues were. Under the Hearing policy, in order to appeal the hearing panel's ruling, the subject-physician is required to "submit a written statement ... relative to factual or procedural matters with which he ... disagrees." Physician asked the hearing panel to provide him with the factual basis for the cursory conclusions in its written report, so that he could meaningfully appeal. Hospital insisted that the hearing panel's report complied with its Hearing policy and declined to submit factual findings.

Physician then appealed to Hospital's board of trustees. On April 20, 2006, the board imposed a 120–day suspension and a five-year probationary period. On May 2, 2006, Physician sued to enjoin Hospital's discipline. The district court granted the

temporary injunction on November 16, 2006. Hospital appeals.

## ISSUES

I. Did the district court err in determining that Hospital is not afforded immunity from injunction under federal law?

II. Did the district court err by denying Hospital immunity from injunction under state law?

III. Did the district court err by denying Hospital immunity from injunction by virtue of its contract with Physician?

## ANALYSIS

▮▮▮ We review the grant of a temporary injunction for an abuse of discretion. *Metro. Sports Facilities Comm'n v. Minn. Twins P'ship*, 638 N.W.2d 214, 220 (Minn. App.2002), *review denied* (Minn. Feb. 4, 2002). On an appeal from the grant of a temporary injunction we view the facts in the light most favorable to the injunction. *Bud Johnson Constr. Co., Inc. v. Metro. Transit Comm'n*, 272 N.W.2d 31, 33 (Minn.1978).

## I

▮▮▮ Hospital argues that it is immune from the temporary injunction by virtue of the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11111(a) (2000), which grants hospitals immunity from a suit for damages if their peer-review actions meet certain standards. But HCQIA only provides immunity from damages, not from injunctions. *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 911 (8th Cir.1999). Because Hospital appeals the grant of an injunction, HCQIA does not apply; therefore Hospital is not afforded immunity under HCQIA from Physician's action seeking an injunction.

## II

▮▮▮ Hospital also claims immunity from Physician's temporary injunction under state law. Whether a party is entitled to statutory immunity is a question of law, which is subject to de novo review. *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn.2000). Minnesota law provides immunity to hospitals from damages or other relief in any action brought by a person subject to a peer-review inquiry. Minn. Stat. § 145.63, subd. 1 (2006). Unlike HCQIA, discussed above, state-law immunity extends to injunctive relief. *Compare id. with* 42 U.S.C. § 11111(a). However, a hospital forfeits its state-law immunity if its peer-review process was motivated by malice toward the subject of a peer-review inquiry. Minn.Stat. § 145.63, subd. 1. The Minnesota Supreme Court has defined malice in the context of statutory immunity as "nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991). The conclusion of malice depends on found facts. *State ex rel. Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 572 & n. 8 (Minn.1994). But whether a district court's factual findings support its legal conclusion is a question of law, reviewed de novo. *All Parks Alliance for Change v. Uniprop Manufactured Hous. Cmtys. Income Fund*, 732 N.W.2d 189, 193 (Minn. 2007).

At oral argument before this court, Hospital clarified that on this appeal it does not challenge the district court's factual findings. Rather, Hospital contends that the district court's factual findings do not support the conclusion that the peer review was motivated by malice. The district court's denial of immunity was based on its tacit conclusion, drawn from found facts, that Hospital's peer-review process leading to imposition of discipline against

Physician was motivated by malice. *See* Minn.Stat. § 145.63, subd. 1 (stating that immunity does not protect actions taken in malice). Because Hospital alleges that the district court's factual findings do not support such legal conclusion, our review of the court's determination that the peer-review action was taken in malice is de novo. *See All Parks Alliance for Change*, 732 N.W.2d at 193.

▇▇▇ The district court reached its conclusion of malice based on six findings: (1) Hospital's peer-review process began outside Hospital's normal channels; (2) Hospital began its investigation in contravention of the Hearing policy, which required that Hospital leadership meet with Physician to discuss his behavior before seeking discipline; (3) Hospital conducted the investigation in a manner contrary to the DAB policy, which required Hospital to give Physician an opportunity to correct his behavior before imposing discipline; (4) in charging Physician, Hospital cited incidents that were unfairly old; (5) Hospital treated Physician disparately as compared to other physicians subjected to discipline; and (6) Hospital improperly applied its power to punish Physician to "make a public statement." [1] Hospital argues that these findings, even taken as true, are insufficient to show malice. But each of these procedural irregularities is significant and, taken together, they clearly demonstrate that Hospital intentionally, and repeatedly, violated its own established procedural safeguards. Because the district court's findings show that Hospital repeatedly disregarded several of its own policies without justification in disciplining Physician, those findings are sufficient to support the district court's

conclusion that Hospital acted willfully in violating its own peer-review procedures. That willfulness is malice. *See Rico*, 472 N.W.2d at 107 (defining malice in similar context as "the intentional doing of a wrongful act without legal justification.")

▇▇▇ Hospital argues in the alternative that even if the district court's findings show malice, the district court erred by denying Hospital's claim of state-law immunity because there is no showing the peer review was *motivated* by malice. Hospital argues that the district court's findings of malice relate only to *how* the peer review occurred, but do not address *why* the review occurred; according to Hospital, the statute requires an inquiry into the "why" of the peer review. This argument fails for two independent reasons. First, malice is an objective inquiry. *State ex rel. Beaulieu*, 518 N.W.2d at 571. Hospital treats the question as a subjective one, asking the court to probe the minds of the reviewers. But the issue does not implicate what the reviewers believed; rather, the issue is whether Hospital's actions were such as to allow the district court to conclude that the peer review was motivated by malice. *See Rico*, 472 N.W.2d at 107 ("[W]ilful and malicious are synonymous."). The objective evidence of *how* Hospital violated its procedures in the course of disciplining Physician is a sufficient basis to infer the conclusion of *why* the Hospital acted as it did—that it was motivated by malice.

▇▇▇ Second, we read district court decisions charitably. *See Custom Farm Servs., Inc. v. Collins*, 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976) (stating that

---

1. The National Practitioner Data Bank is a national database set up under HCQIA to collect information about adverse credentialing actions taken against physicians. A suspension longer than 30 days must be reported to the Data Bank. 45 C.F.R. § 60.9(a)(1)(i) (2007). A negative report in the Data Bank makes it more difficult for a Physician to obtain privileges at other hospitals and to receive referrals.

appellate courts do not presume error); *see, e.g., Graphic Arts Educ. Found. v. State,* 240 Minn. 143, 145–46, 59 N.W.2d 841, 844 (1953) (holding that a fact found by the court, even if expressed as a conclusion of law, is treated as a finding of fact). Here, although the district court did not make an explicit finding of motivation by malice, it did find that Hospital "subjected [Physician] to substantial malice." The district court examined, in detail, six discrete bases for malice. The district court quoted the statute to the effect that motivation by malice bars immunity. And ultimately, after finding "substantial malice," the court denied Hospital immunity. The only reasonable inference to be drawn from the district court's analysis is that the court determined that the peer review was motivated by malice. *See Buller v. Minn. Lawyers Mut.,* 648 N.W.2d 704 (Minn.App.2002) (stating that, when characterizing the record, "we honor substance over form" and "magic words" are not required for an appellate court to conclude that a district court made a legally appropriate determination, when that determination can be inferred from the district court's actions.), *review denied* (Minn. Aug. 20, 2002).

■ Hospital's assertion that the district court's findings of fact do not support a conclusion that the peer review was motivated by malice thus fails. Hospital repeatedly acted in manners contrary to its established safeguarding policies; it treated Physician differently from others who had been subjected to peer review; and it imposed a harshly public punishment against Physician without first attempting a less-extreme intervention. The factual findings made by the district court are sufficient to support the conclusion that Hospital engaged in "the intentional doing of a wrongful act" or "the willful violation of a known right." *Rico,* 472 N.W.2d at

107. Therefore, we · affirm the district court's denial of Hospital's claim of immunity under Minn.Stat. § 145.63.

■ Amici characterize Physician's suit as a dangerous invitation for courts to substitute their judgment for that of hospital peer reviewers and thereby undermine the peer-review process. But we do not approve limited judicial supervision here to engage in such mischief. Neither the ruling of the district court nor our decision here implicates the judgment of the peer reviewers on the merits. Rather, the focus of attention centers only on Hospital's wrongful acts without legal justification, in willful disregard of Physician's procedural rights under Hospital's own policies. Judicial review of peer-review actions is properly limited, as in this case, to only whether peer reviewers abided by their own established procedures.

## III

■ Finally, Hospital argues that Physician contractually agreed not to challenge any of its peer-review decisions in court. Contract provisions that purport to limit liability are strictly construed against the benefited party. *Johanns v. Minn. Mobile Storage, Inc.,* 720 N.W.2d 5, 9 (Minn.App.2006), *review denied* (Minn. Oct. 25, 2006). A contract cannot release a party from intentional or willful acts. *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 923 (Minn.1982). The district court did not address this argument explicitly. But the district court's findings and implied conclusion that Hospital acted with and was motivated by malice in disciplining Physician precludes Hospital from successfully asserting its contractual immunity. *See id.*

## DECISION

■ Because this is an action for injunctive relief to which federal-law immu-

nity does not apply; because the record supports the conclusion that Hospital was motivated by malice when it investigated and disciplined Physician through its peer-review process; and because actions motivated by malice are not shielded by statutory immunity under Minn.Stat. § 145.63 or by the parties' contract, the district court did not err in granting Physician's temporary injunction.

**Affirmed.**