## I. R. GALOB v. ROBERT SANBORN AND OTHERS.
## VILLAGE OF HIBBING, BY AND THROUGH ITS PUBLIC
## UTILITIES COMMISSION, APPELLANT.

160 N. W. (2d) 262.

July 19, 1968—No. 40,686.

*Robert A. Hughes, Palmer, Hood, Crassweller & McCarthy, James V. Abate, Jack Fena,* and *Fena & Mathias,* for appellant.

*I. R. Galob,* pro se, *Tom Wangensteen,* and *Wangensteen & Wangensteen,* for respondent.

ROGOSHESKE, JUSTICE.

Defendant village of Hibbing, by and through its Public Utilities Commission, appeals from a money judgment entered against the commission declaring the commission to be a legal entity subject to suit in its own name and liable for the judgment rendered against it.

The action was one for a declaratory judgment seeking a determination that legal services rendered by plaintiff in connection with the case of Hughes v. Micka, 269 Minn. 268, 130 N. W. (2d) 505, were rendered "for the Defendants Micka, Sanborn and Fotopoulos in their behalf as individuals and as Public Utilities Commissioners"; that such services were "accepted and acquiesced in by said Defendants, and [are] a

valid and legal obligation of the Defendants; and of the Public Utilities Commission of the Village of Hibbing"; and "[t]hat the sum of $10,000.00 is a fair and reasonable value of the legal services rendered."

Initially, plaintiff brought the action against only the individual commissioners. His complaint alleged that the laws by which the commission was established gave it no "authority to sue or be sued in its own name" and that "as a result, * * * any actions brought against the Commission or its agents" are customarily brought "against the Village of Hibbing"; "defended" at the commission's expense and "all claims settled or litigated" are paid "from Public Utilities funds"; that plaintiff's services had been retained and accepted by defendants "as services rendered in their behalf, individually * * * and on behalf of the Public Utilities Commission"; and that a verified claim for $10,000 had been presented to the commission but payment had not been made, nor had a declaratory judgment action to seek a judicial determination that the claim is a valid obligation of the commission been commenced by its regularly retained attorney as the commission had directed.

By their joint answer, defendants denied that they, either individually or as a commission, "ever retained" plaintiff as special attorney, alleging that if he "is entitled to any remuneration for any legal services," payment therefor would be due "from third parties" (inferentially, the village of Hibbing) in that "plaintiff at all times" during the litigation for which he claims he rendered legal services to the commission "appeared as of record and otherwise * * * for the Village of Hibbing." Defendants further specifically denied that the amount claimed "is a fair and reasonable value for any alleged legal services rendered."

With their answer, defendants served a third-party complaint upon the village of Hibbing, which was dismissed on motion of the village for failure "to state a claim upon which relief can be granted." Thereupon, separate motions by the individual defendants for an order joining the village as an additional party defendant and by plaintiff for leave to amend his complaint and include the village as a party were granted.

The individual defendants then served an amended answer, incorporating the allegations previously referred to and alleging that during the litigation referred to in the complaint plaintiff "was acting as attorney for

the Village" under a "contract of retainer" and performed such services with the knowledge and acquiescence of the village officials. They further alleged that if plaintiff "furnished legal services outside of his regular retainer," the village "would be liable."

Plaintiff's amended complaint, served upon the village, included the allegations of his original complaint and one additional paragraph which stated that naming the village as a party defendant was only "for the purpose of conferring jurisdiction in this action against the * * * Commission of the Village of Hibbing, since said * * * Commission, as such, is not a legal entity, permitting it to be sued or to sue in its own name"; that the village, "as such, will in no way be liable for any judgments which may be entered against" the defendants individually; and that the legal services in question were not "rendered for the Village of Hibbing in his capacity as Village Attorney."

In its answer, the village alleged that the commission "had the right to sue and be sued"; that the services were rendered for and on behalf of the commission, not the village; and that plaintiff's claim "is a legal and valid obligation" of the commission.

Following the taking of depositions of plaintiff and the individual defendants, plaintiff moved for a summary judgment that his claim be declared "a valid and legal claim against the * * * Commission" payable from "Public Utilities funds." The individual defendants moved for dismissal of the action against them. At the hearing on the motions, the village also moved for judgment declaring that the commission "has a right to sue and be sued" in its own name and that the court upon the record determine "whether legal services rendered by the plaintiff for the * * * Commission are a legal obligation of the * * * Commission." The court made findings of fact, which included:

"That the Public Utilities Commission is an independent department of the Village of Hibbing, having exlusive control of its operations and income, and is authorized by law to retain regular counsel as well as special counsel, if necessary.

"That the plaintiff as Village Attorney was not required under the terms of his employment to furnish legal services to the Public Utilities Department."

Further, the court found that the services in question were rendered by plaintiff at the "request" of the commission; "were satisfactorily performed" and "accepted" by the commission; and "were of the reasonable value of $10,000.00, and are a valid and legal claim against the Public Utilities Department of the Village of Hibbing." The court found that the commission had "ample notice of the claim" and is "wholly in default." Finally, the court found:

"That the Public Utilities Department of the Village of Hibbing, by virtue of the authority granted to it by the laws of this State, is an independent department of the Village of Hibbing, and as such, *henceforth shall be declared a legal entity and have the power to sue in its own name and be subject to suits against it without the necessity of naming the Village of Hibbing, a Municipal Corporation, as a party to such litigation, and any judgment rendered against it shall be paid from the Public Utilities funds.*" (Italics supplied.)

Following entry of judgment, the village attorney refused to sign a notice of appeal to this court. Upon resolution of the village council and the commission, special counsel was retained by the village and directed to appeal the judgment. Upon motion, the district court ordered that such counsel be substituted to represent the village for the purpose of prosecuting an appeal by the commission in the name of the village but at the commission's expense. Thereupon, this appeal by the "Village of Hibbing by and through its Public Utilities Commission" was filed.[1]

Basically, the defendant village asserts that we must reverse the judgment because (1) the commission is not a legal entity which can sue and be sued, and (2) summary judgment should not have been granted because genuine issues of material fact were presented by the record.

We agree that the judgment against the commission cannot stand for the reasons asserted. We regard it as fundamental that the judgment is a nullity because it is entered against the commission, which was neither named as a party to the action nor amenable to suit. Cremer v. Michelet, 114 Minn. 454, 131 N. W. 627.

---

[1] The question of whether the village is an "aggrieved" party and therefore has standing to bring this appeal was not raised, and we decline to consider it.

The trial court was powerless to "declare" that the commission was a legal entity which could sue and be sued in the absence of any statute granting such authority to the commission. The enabling legislation pursuant to which the commission was established does not make it such a legal entity. It merely permits any municipality containing more than 10,000 persons to establish a public utilities commission. The powers of this rather unique commission, including, as the court noted, its exclusive control of its operations and funds, are set forth with considerable specificity; but the power to sue and be sued has never been included. L. 1907, c. 412; L. 1933, c. 111; L. 1949, c. 422; L. 1951, c. 680; L. 1953, c. 655; L. 1959, c. 449; L. 1961, c. 616. It necessarily follows that the commission is merely an agency or department of the village and cannot be sued in its own name. Seattle ex rel. Dunbar v. Dutton, 147 Wash. 224, 265 P. 729; 62 C. J. S., Municipal Corporations, § 559; cf. Monfort v. Wheelock, 78 Minn. 169, 80 N. W. 955.

L. 1951, c. 680, § 5, subd. 5, clearly permits the commission to retain the services of special legal counsel in addition to regularly employed counsel. However, reading the record submitted in support of plaintiff's motion for summary judgment in the light most favorable to defendants (whose dismissal was not ordered as part of the judgment), it unmistakably appears that genuine fact questions concerning plaintiff's employment as special counsel by the commission and the reasonable value of his services are presented. On that basis also, summary judgment could not be granted. Bennett v. Storz Broadcasting Co. 270 Minn. 525, 134 N. W. (2d) 892.

It may be noted that, consistent with the allegations of plaintiff's complaint, his action may be brought against the village. In the event the court's findings of fact are in accord with plaintiff's claims and the commission arbitrarily refuses to pay the judgment from its funds, it would be unreasonable to believe that the village is without a judicial remedy to compel payment.[2]

Reversed.

---

[2] See, e. g., Minn. St. 462.455, providing a procedure to compel payment of a judgment by a municipal housing and redevelopment authority.