Lena M. HYATT, Respondent,

v.

ANOKA POLICE DEPARTMENT, et al., Appellants.

No. A03–1707.

Court of Appeals of Minnesota.

July 19, 2005.

Randall J. Fuller, William J. Marshall, Andrew J. Hippert, Babcock, Neilson, Mannella & Klint, P.L.L.P., Anoka, MN, for respondent.

Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers, Bloomington, MN, for appellants.

Considered and decided by RANDALL, Presiding Judge, KLAPHAKE, Judge, and FORSBERG, Judge.*

## OPINION

KLAPHAKE, Judge.

After she was bitten by a police dog during the arrest of her husband, respondent Lena M. Hyatt sued appellant City of Anoka and its police department under the "dog bite" statute, Minn.Stat. § 347.22 (2002). The city moved for summary judgment, arguing that (1) the dog bite statute does not apply to police dogs; (2) it is entitled to either statutory or vicarious official immunity; and (3) its police department should be dismissed because it is not a legal entity subject to suit. On appeal from the district court's denial of the city's motion, this court reversed, based on its determination that application of the dog bite statute to police dogs would lead to an "absurd" result, in part because such an application would conflict with the statute that allows police to use reasonable force. *Hyatt v. Anoka Police Dep't,* 680 N.W.2d 115 (Minn.App.2004), *review granted* (Minn. July 20, 2004).

On review, the supreme court reversed and remanded the matter to this court to consider the city's alternative claims of immunity and whether the police depart-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ment is a legal entity subject to suit. *Hyatt v. Anoka Police Dep't,* 691 N.W.2d 824, 831 (Minn.2005). Because the police department is not a legal entity subject to suit, it is dismissed. Because the city is entitled to vicarious official immunity, but not to statutory immunity, we affirm in part and reverse in part.

## FACTS

Although the facts are fully set out in the supreme court's opinion, *Hyatt,* 691 N.W.2d at 825–26, the following facts are pertinent to the issues here.

On May 21, 2002, at approximately 1:30 a.m., police officers arrived at a residence to arrest appellant's husband on outstanding warrants for controlled substance crime, fleeing a police officer, and driving after revocation. The homeowner told the officers that appellant and her husband were living in a two-story barn behind the residence. When the police officers entered the barn through an unlocked door, they heard movement upstairs. One officer called for appellant's husband to come out. After receiving no response, Officer Mark Yates and his police dog, Chips, remained at the bottom of the stairs while two officers proceeded upstairs. Yates heard people yelling and scuffling, and ran upstairs after one of the officers called for his assistance.

When Yates arrived at the top of the stairs, he saw one officer with a bloody face. Yates released Chips either as appellant's husband jumped out a window or immediately after he jumped; appellant was either standing between her husband and Chips, was pushed into the dog's path by her husband, or stepped into the dog's path of her own accord. As Chips took appellant down and apprehended her, Yates attempted to follow her husband out the window but caught himself before he fell two stories to the ground. The other two officers remained still, out of the dog's way, until Yates returned to release him.

## ISSUES

1. Should the police department be dismissed because it is not a legal entity subject to suit?

2. Did the district court err in determining that the city is not entitled to statutory immunity?

3. Did the district court err in determining that the city is not entitled to vicarious official immunity?

## ANALYSIS

"On an appeal from summary judgment, this Court determines whether there are genuine issues of material fact and whether the district court erred in applying the law." *Watson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 411 (Minn.1996). "Summary judgment is appropriate when a governmental entity establishes its actions are immune from liability." *Gutbrod v. County of Hennepin,* 529 N.W.2d 720, 723 (Minn.App.1995). The issue of whether immunity applies is a legal question subject to de novo review. *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d 216, 219 (Minn.1998). The burden is on the party claiming immunity. *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn.1997).

### I.

The city argues that the Anoka Police Department is not a legal entity subject to suit and that it should be dismissed as a party to this action. The district court did not address this issue.

While a municipal corporation such as the city has the authority to sue and be sued, its departments have not been given that specific authority. *See* Minn.Stat. §§ 412.111 (2002) (under chapter govern-

ing statutory cities, city council is granted authority to create departments and appoint officers and agents as deemed necessary for proper management and operation of city affairs), 412.211 (2002) (requiring every city to be municipal corporation having certain powers and rights, including right to "sue and be sued"). As a department or agent of the city, the police department is not a legal entity subject to suit. *Maras v. City of Brainerd,* 502 N.W.2d 69, 79 (Minn.App.1993) (holding that because Crow Wing County Sheriff's Department is not "person" subject to suit, claims against it must be dismissed), *review denied* (Minn. Aug. 16, 1993). We therefore dismiss the police department as a party to this case. *See Galob v. Sanborn,* 281 Minn. 58, 61–62, 160 N.W.2d 262, 265 (1968) (reversing judgment entered against public utilities commission as invalid, because commission was not legal entity that could sue or be sued, but noting that action could be maintained against village).

## II.

■ The city argues that it is entitled to statutory immunity because the city's decision to own, maintain, and use police dogs is a discretionary one entitled to protection under Minn.Stat. §§ 466.02, 446.03, subd. 6 (2002) (providing that cities are immune from claims "based upon the performance or the failure to exercise or perform a discretionary function or duty"). The district court determined that statutory immunity did not apply because "Officer's Yates' use of [Chips] under the circumstances may only be considered 'operational' as it does not bear the indicia of social, political, or economic motivation that are the hallmark of public policy decision making."

■ When discussing statutory immunity, we must identify the exact governmental conduct that is being challenged. *See Conlin v. City of St. Paul,* 605 N.W.2d 396, 400 (Minn.2000). Statutory immunity does not protect operational conduct or the implementation of policy; rather, it protects conduct and decision making at the planning level, where cities evaluate factors involving the financial, political, economic, and social effects of its decisions. *See Watson,* 553 N.W.2d at 412–13.

The city characterizes the challenged conduct as involving the city's decision to own police dogs because respondent's claim is based solely on the dog bite statute, which imposes liability on the city merely because it owns these dogs. *See* Minn.Stat. § 347.22 (2002) (imposing liability on any dog "owner," if dog "without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be"). The city further asserts that its decision to own police dogs was based on an evaluation of a number of policies, including officer safety, public safety, training issues, the expenses associated with owning dogs, and the effectiveness of police dogs.

While the city's *liability* to respondent depends partially upon its decision to own police dogs, respondent's *claim* challenges the conduct of Officer Yates and his decision to release Chips, despite the fact that respondent was standing between Chips and her husband. When the challenged conduct is examined in this way, Yates' decisions to deploy Chips and pursue respondent's husband must be viewed as operational level decisions that are not entitled to statutory immunity. We therefore affirm the district court's determination that the city is not entitled to statutory immunity.

## III.

■ The city alternatively argues that it is entitled to vicarious official immunity

for the decisions made by its police officer to deploy his police dog during the apprehension of a fleeing felony suspect. "Official immunity is a common law doctrine that protects government officials from suit for discretionary actions taken by them in the course of their official duties." *Sletten v. Ramsey County,* 675 N.W.2d 291, 299 (Minn.2004). A "[p]ublic official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988).

■ Police officers are "classified as discretionary officers entitled to that immunity." *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990). A discretionary decision involves professional judgment balancing several factors, while a ministerial decision is absolute and certain, and involves the mere execution of a specific duty under designated facts; official immunity is not available when an officer is exercising a ministerial duty. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 315 (Minn.1998); *Watson,* 553 N.W.2d at 414.

■ "When the job is simple and definite," as when a public official has a clear "duty to adhere to ordinances and statutes," the official is not entitled to immunity. *Wiederholt,* 581 N.W.2d at 316. Moreover, an official cannot "convert a ministerial decision into a discretionary one by refusing to comply with the mandate contained in a city ordinance." *Id.; see also Anderson v. Anoka Hennepin Indep. Sch. Dist. 11,* 678 N.W.2d 651, 660 (Minn.2004) (stating that "ministerial-conduct bar to official immunity arises when the allegation is that a ministerial duty was either not performed or was performed negligently").

The district court here concluded that it could not grant summary judgment to the city based on official immunity because "several fact issues remain," including "whether Officer Yates exercised discretion by directing Chips to charge [respondent] or whether Chips was acting in the perfunctory manner in which he had been trained"; "whether the other officers present were aware that Chips had seized [respondent] and whether Chips would follow a release command if given by another officer"; and "whether once Officer Yates realized that Chips had seized [respondent] he released Chips immediately or knowingly allowed Chips to continue to maul [respondent.]"

The issue, however, is not whether genuine issues of fact exist, but whether Yates' decisions were discretionary, involving his individual professional judgment, or whether he was merely executing specific duties arising from fixed and designated facts. This requires examination of whether Yates' decisions involved ministerial duties, which are often defined by statute, ordinance, or department regulation. *See, e.g., Anderson.,* 678 N.W.2d at 659 (concluding that ministerial duty established by unwritten school policy); *Nelson v. Wrecker Servs., Inc.,* 622 N.W.2d 399, 403 (Minn.App.2001) (finding that statute established ministerial duty for emergency vehicle to activate its lights and siren).

Respondent argues that Yates violated ministerial duties established by statute and by department policy. Department policy reminds officers, including those with police dogs, that they may "only use that amount of force which is necessary to make or maintain an arrest" and that "no employees shall use more force ... than is reasonable and necessary." Minn.Stat. § 609.06 (2002) allows police to use reasonable force to effect a lawful arrest, and in this case, the supreme court determined

that the statute applies to harm caused to an innocent bystander or to a third person "who is or reasonably appears to be impeding a lawful arrest." *Hyatt*, 691 N.W.2d at 829.

■ Although Yates' conduct is covered by the reasonable force statute and by department policy, that fact does not necessarily prove that a ministerial duty was involved. "[A] ministerial duty is one in which nothing is left to discretion; it is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Sletten*, 675 N.W.2d at 306 (quotation omitted). For instance, a ministerial duty was found to exist where a municipal code provided that "it shall be the duty of the City Engineer to immediately repair" any broken sidewalk. *Wiederholt*, 581 N.W.2d at 316; *see also Waste Recovery Coop. v. County of Hennepin*, 517 N.W.2d 329, 333 (Minn.1994) (holding that duties fixed by requirements of statute or municipal policy are ministerial and not protected by official immunity).

Here, under department policy and the reasonable force statute, Yates was entitled to use Chips to effectuate the arrest of respondent's husband. The critical question still involves whether the actions taken by Yates were "reasonable," the resolution of which would require us to second-guess his discretionary decisions and professional judgment. The following facts are undisputed: (1) Yates knew that respondent's husband had felony warrants out for his arrest; (2) Yates heard fighting upstairs and a woman screaming in a threatening tone; (3) Yates heard one of the officers call for assistance; and (4) when Yates arrived at the top of the stairs, he saw a woman standing in the middle of the room and the two other officers off to the side, one with blood on his face. According to Yates, he released Chips when he saw respondent's husband flee through a window, and he decided to pursue respondent's husband rather than order Chips off of respondent.

While respondent testified that her husband was already out the window by the time Yates and Chips reached the top of the stairs, her differing testimony on this point does not change the fact that Yates made a discretionary decision to use what he considered was reasonable force, the deployment of Chips, to assist in the arrest of respondent's husband, whether he was still in the room or whether he had just fled. Yates' decisions were made after considering the safety of the other officers, the immediacy of the situation, and the actions by respondent's husband to flee and resist arrest. And, while respondent criticizes the failure of the other officers to assist her while Chips was biting her, the decisions of those officers similarly involved moment-to-moment decisions made by officers during the course of the arrest of a fleeing suspect. *See Kuha v. City of Minnetonka*, 365 F.3d 590, 608 (8th Cir. 2003) (holding that under Minnesota law, "officers' decisions to use a police dog, and the moment by moment decisions made in the course of that use, were, as a matter of law, discretionary acts, and the officers are entitled to official immunity"). We therefore conclude that Yates and the other officers are protected by official immunity for their actions.

■ Even if we conclude that the officers' decisions involved discretionary acts, they are not entitled to official immunity if they acted maliciously. Malice is "the intentional doing of a wrongful act without legal justification" or the "willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991). "Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally pro-

hibited." *Kelly v. City of Minneapolis,* 598 N.W.2d 657, 663 (Minn.1999).

Respondent insists that genuine issues exist as to whether Yates and the other officers acted with malice. But, as the city argues, the focus must be on whether the officers' actions can be construed as an intentional effort to engage in behavior that they had reason to know was "prohibited." *Id.* While respondent may criticize the officers' decisions and suggest that those decisions were done carelessly or without reasonable care, she does not claim that the officers' knew that their actions were prohibited by department policy or by statute; nor does she claim that the officers chose to violate those regulations or otherwise made decisions in willful violation of known rights.

Finally, the city argues that if its officers are entitled to official immunity, it is entitled to vicarious official immunity. The supreme court has noted that "it would be anomalous" to impose liability on a municipality for the very same acts for which its official receives immunity. *Wiederholt,* 581 N.W.2d at 316 (quotation omitted). The city had policies regarding the use of force and the use of police dogs, and the immunity extended to the officers for their discretionary decisions involving those policies extends to the city. *See Pletan v. Gaines,* 494 N.W.2d 38, 43 (Minn. 1992) (holding that with respect to police pursuits, police officer's official immunity extends to officer's public employer). We therefore conclude that the district court erred in determining that the city was not entitled to vicarious official immunity for the decisions made by its officers.

## DECISION

While the district court properly denied summary judgment to the city on the issue of statutory immunity, it erred in denying the city's motion for summary judgment on the issue of vicarious official immunity. We therefore affirm in part and reverse in part. We further conclude that the police department is not a legal entity subject to suit and is therefore dismissed from this action.

**Affirmed in part and reversed in part.**

RANDALL, Judge (dissenting).

I respectfully dissent and would remand to the district court for trial on genuine issues of material fact arising from the question of whether Officer Yates's actions were willful or malicious. *See Kelly v. City of Minneapolis,* 598 N.W.2d 657, 664 n. 5 (Minn.1999) ("[w]hether an action is discretionary or ministerial is a question of law for the court, but whether an officer acted maliciously is usually a question of fact for the jury") (citing *Elwood v. Rice County,* 423 N.W.2d 671, 679 (Minn.1988)). I agree with the majority that if Yates's actions are covered by official immunity the City of Anoka is protected by vicarious official immunity. However, I cannot go along with the majority's conclusion that, on this set of facts, the issue is ripe for summary judgment in favor of Anoka. I suggest the district court properly denied respondent's motion for summary judgment, and set the case for trial on contested fact issues.

A determination of Yates's official immunity (and, hence, Anoka's vicarious official immunity) requires a two-step inquiry: (1) whether the act required the exercise of judgment and discretion and is therefore the sort of conduct covered by official immunity; *and* (2) whether the alleged act, even though of the sort generally covered by official immunity, was willful or malicious and therefore not entitled to protection. *Kelly,* 598 N.W.2d at 664; *Elwood,* 423 N.W.2d at 677 (noting that there are two exceptions to the general rule precluding official liability).

As stated above, the question of whether an officer's actions were willful or malicious is one for the jury. *Kelly,* 598 N.W.2d at 664 n. 5. Here, the district court refused to grant summary judgment on the official immunity question because it determined that "several fact issues remain," including "whether the other officers present were aware that Chips had seized [respondent] and whether Chips would follow a release command if given by another officer;" and "whether once Officer Yates realized that Chips had seized [respondent] he released Chips immediately or knowingly allowed Chips to continue to maul [respondent]." These factual issues are unresolved and should not be determined by appellate review.

If the other officers stood by and watched while Chips mauled respondent, and they could have done something about it, it would be hard to say that those officers did not engage in conduct they knew to be prohibited, i.e., allowing a police dog to harm an innocent bystander. *See id.* at 663 ("[m]alice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited"). If Yates knowingly allowed Chips to continue to maul respondent, he also engaged in prohibited conduct. A large, unresolved question lingers out there. In general, K–9 police/attack dogs are specifically trained to answer to only one officer, that dog's master. The rationale is to avoid conflicting signals and allow the dog, in serious situations, to have a clear line of command. Yates was this dog's controller. If he was the only one who could control the dog, the factual question arises as to whether there was willful conduct in Yates intentionally pursuing Hyatt's husband and running out of the room after him, knowing that Chips was still attacking Hyatt, and knowing that the remaining officers at the scene could not do anything about that, short of drawing their pistols or batons and shooting or clubbing Chips. As the record shows, Hyatt's husband jumped out a window, and Yates went through the window after him. As the majority points out, he "caught himself before he fell two stories to the ground." This is not a speculative scenario. This is a real scenario. What if Yates does not "catch" himself and falls two stories to the ground and is knocked unconscious or otherwise incapacitated. You still have Chips upstairs mauling Lena Hyatt, and you have two Anoka officers standing around who are helpless to do anything about it if Chips has been trained to respond to commands from only Yates. In that situation, the dog could easily have inflicted egregious injuries on Hyatt or caused her death, absent the other two officers using whatever they could find to stop the dog's attack.

Respondent alleges willfulness; determination of the ultimate answers to these questions, as the district court properly held, is not appropriate at the summary judgment stage. Accordingly, I would remand for a trial on the factual issue of whether the officers on the scene engaged in willful or malicious behavior.