MEDICAL STAFF OF AVERA MARSHALL REGIONAL MEDICAL CENTER on its Own behalf and in its Representative Capacity for its Members, et al., Appellants,

v.

AVERA MARSHALL d/b/a Avera Marshall Regional Medical Center, et al., Respondents.

No. A12–2117.

Court of Appeals of Minnesota.

July 22, 2013.

Review Granted Oct. 15, 2013.

Kathy S. Kimmel, Margo S. Struthers, Oppenheimer Wolff & Donnelly, LLP, Minneapolis, MN, for appellants.

David R. Crosby, Bryant D. Tchida, Leonard, Street and Deinard, P.A., Minneapolis, MN, for respondents.

Eric J. Magnuson, Daniel J. Supalla, Briggs and Morgan, P.A., Minneapolis, MN, for amici curiae American Medical Association, Minnesota Medical Association, American Osteopathic Association, American Academy of Family Physicians, Minnesota Academy of Family Physicians, and Minnesota Chapter American Academy of Pediatrics.

David F. Herr, Michael C. McCarthy, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota; and Benjamin Peltier, Vice President, Legal Services, Minnesota Hospital Association, St. Paul, MN, for amicus curiae Minnesota Hospital Association.

Considered and decided by ROSS, Presiding Judge; CHUTICH, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

This case presents two compelling and (in this case) competing policy interests. On one side is the interest of hospital management in controlling hospital operations and providing a safe environment for patients through bylaws governing the medical staff. On the other side is the interest of a medical staff in carrying out its obligations to patients by controlling how it organizes itself and how it influences the formation of and compliance with its bylaws. Although both sides raise persuasive policy arguments, we conclude that under Minnesota law a medical staff does not have legal capacity to sue and that the medical staff bylaws are not an enforceable contract. Therefore, we affirm the district court's grant of summary judgment to the hospital.

## FACTS

Respondent Avera Marshall Regional Medical Center is a nonprofit, charitable hospital incorporated under the Minnesota Nonprofit Corporation Act, Minn.Stat. §§ 317A.001–.909 (2012). In 2009, after more than 60 years of owning and operating the hospital, the City of Marshall transferred the facility to Avera in order to increase the range of health care services available in the community.

Appellants, physicians working at Avera Marshall, are collectively referred to as the medical staff. The corporate bylaws of Avera Marshall require that the hospital (through its board) establish medical staff bylaws. According to the medical staff bylaws, first approved in 1995, two of the "enumerated purposes" of the medical staff are

[t]o initiate and maintain rules, regulations and policies for the internal governance of the Medical Staff ... [and to] provide a means whereby issues concerning the Medical Staff and the Medical Center may be directly discussed by the Medical Staff with the Board of Directors and the Administration, with the understanding that the Medical Staff is subject to the ultimate authority of the Board of Directors.

To serve on Avera Marshall's medical staff, a physician must agree to be bound by the medical staff bylaws.

The hospital affords an active medical staff member certain "prerogatives," which include the prerogative to attend and vote on matters presented at medical staff and committee meetings, and to hold medical staff office and vote on committees that the medical staff member serves on. These prerogatives are limited, however, "by other sections of [the] Medical Staff Bylaws and by the Medical Staff Rules and Regulations, subject to approval by the Board of Directors."

The powers of the medical staff to discharge its responsibilities under the bylaws and under the corporate bylaws of the medical center are "[s]ubject to the authority and approval of the Board of Directors." The medical staff bylaws provide that "[n]othing contained herein shall supersede the general authority of the Medical Center Board of Directors as set forth in its corporate bylaws or applicable common law or statutes." The corporate

bylaws assign to the board of directors the duty to exercise "oversight of the business affairs of the Corporation and . . . all of the powers which may be exercised or performed by the Corporation under the laws of the State of Minnesota."

The medical staff "bylaws may be amended or repealed, subject to approval by a majority vote of the Medical Center Board." A proposal to amend or repeal the bylaws can come from the chief of staff, the medical staff executive committee (MEC), the board of directors, or a petition signed by one third of the medical staff. The bylaws describe a process whereby the proposed changes to the bylaws are reviewed by the MEC or a special committee appointed by the MEC. Then, upon 30 days' notice, two-thirds of the medical staff must vote to approve or reject the change to the bylaws. If the medical staff fails to timely address a proposed change to the bylaws, the board of directors may adopt the amendment or its repeal. Regardless, all changes to the medical staff bylaws "become effective upon the approval of the Board of Directors." Moreover, the bylaws indicate that the process of amending or repealing the medical staff bylaws does not "supersede the authority of the Medical Center Board of Directors as set forth in its corporate bylaws or applicable common law or statutes."

The medical staff elects its officers and leaders, and it designates its MEC. The leaders of the medical staff are the chief of staff and the chief of staff-elect. At the time this action commenced, Dr. Steven Meister was the chief of staff at Avera Marshall. Dr. Jane Willett was chief of staff-elect. Both agreed that they are required, as a condition of receiving privileges at Avera Marshall, to be bound by and comply with the bylaws.

Many physicians who work for Affiliated Community Medical Centers, P.A. (ACMC) also hold privileges at Avera Marshall. In the fall of 2010, the physicians comprising the MEC were half Avera Marshall physicians and half ACMC physicians. They informally agreed to maintain those proportions because they reflected the overall proportions of the medical staff at Avera Marshall (although ACMC physicians and those aligned with ACMC on the Avera Marshall staff made up a slim majority of the medical staff).

ACMC and Avera Marshall have not always seen eye to eye. In 2010, ACMC sued Avera Marshall for allegedly steering patients away from ACMC. Avera Marshall contends that ACMC physicians took advantage of the absence of some physicians at a critical vote in order to obtain a majority position on the MEC, despite the informal agreement to keep the body balanced between ACMC and Avera Marshall physicians. This imbalance in representation caused Avera Marshall to become concerned that ACMC would use its majority status on the MEC to advance its litigation against the hospital.

A dispute also arose between Avera Marshall and ACMC physicians on the MEC over the composition of a quality-improvement committee. The disagreement grew to the point where the two sides appointed conflicting slates of appointees to the committee. An Avera Marshall attorney began attending MEC meetings. ACMC ended up hiring an attorney to represent its interests in the composition of the MEC and the quality-control committee. Dr. Meister then ordered the exclusion of the president and CEO of the hospital and her staff from the MEC meetings. Eventually, ACMC members of the MEC began holding meetings at ACMC offices with their attorney.

Avera Marshall alleges that the conflict with ACMC affected the quality of patient care. It contends that ACMC physicians have interfered with patient orders prepared by Avera Marshall physicians, and that the medical staff leadership has neglected aspects of its credentialing duties. Dr. Meister denies that this dispute is about a conflict between Avera Marshall and ACMC, claiming instead that it is about the authority granted the medical staff by the bylaws to govern itself free of improper influence by Avera Marshall. He also denies that the medical staff has not met its credentialing obligations.

On January 17, 2012, Avera Marshall sent a letter advising the medical staff that it was repealing the medical staff bylaws and promulgating new bylaws. The letter indicated that the proposed bylaws were approved by the board of directors, and the letter solicited written feedback from medical staff members regarding the revisions by March 1. The changes were scheduled to take effect on April 1.

Dr. Meister claimed that he had no prior knowledge that the board intended to amend the bylaws. On January 24, the medical staff held a general meeting where Avera Marshall's CEO and president stated that the proposed bylaw changes would not be submitted to the medical staff for a vote, but that individual members of the medical staff could submit comments on the new bylaws.

The new bylaws made a variety of changes to the functions and governance of the medical staff. They also added requirements for eligibility to serve on the medical staff, established more clearly defined work requirements for the medical staff, modified the process and timing for electing medical staff officers, and modified clinical rules and regulations. The district court characterized the changes as a "transition to a top-down, management-based approach to hospital administration." The medical staff engaged in a process of reviewing the proposed bylaws and on March 20, 2012, the medical staff voted on the proposed changes. The medical staff rejected the repeal by a margin of 18 to 10. It also rejected the new bylaws by a margin of 17 to 11. Nonetheless, Avera Marshall instituted the new bylaws on May 1, 2012.

Shortly after Avera Marshall announced the new bylaws, the medical staff and MEC (on their own and in their representative capacity), and Drs. Meister and Willett brought a nine-count declaratory judgment action pursuant to Minn.Stat. §§ 555.01–.16 (2012), asking the district court to declare that the medical staff has standing and capacity to sue, and that the medical staff bylaws are an enforceable contract between the medical staff and Avera Marshall. The medical staff also asked the district court to enjoin Avera Marshall from repealing the old bylaws and imposing new ones, and for attorney fees. Through several orders addressing a request for a temporary restraining order, motions to dismiss for failure to state a claim, and a motion for summary judgment, the district court determined that the medical staff lacks capacity to sue and that the medical staff bylaws are not a contract. The district court entered judgment for Avera Marshall, and this appeal follows.

## ISSUES

I. Is the medical staff a legal entity with standing and capacity to sue?

II. Do the medical staff bylaws comprise a contract that binds Avera Marshall and prevents it from unilaterally changing the bylaws?

## ANALYSIS

"A motion for summary judgment shall be granted when the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993); *see* Minn. R. Civ. P. 56.03. On appeal, this court "view[s] the evidence in the light most favorable to the party against whom judgment was granted." *Id.* "A district court's findings regarding entitlement to injunctive relief will not be set aside unless clearly erroneous." *Haley · v. Forcelle,* 669 N.W.2d 48, 55 (Minn.App.2003), *review denied* (Minn. Nov. 25, 2003).

## I. The district court did not err in concluding that the medical staff is not a legal entity with capacity to sue.

In the first count of its amended complaint, the medical staff asked the district court to declare that the medical staff has capacity and standing to bring the declaratory judgment action. The district court granted Avera Marshall summary judgment on this count, concluding that the medical staff is not an unincorporated association with the capacity to sue.

The parties do not dispute that the medical staff is neither suing solely as an individual, nor as a corporation. Instead, the medical staff contends that it is suing in its representative capacity, and that its form has been recognized as a legal entity. It argues that it has capacity to sue because its collective form—what the medical staff says is an unincorporated association—has been statutorily granted capacity to sue. The medical staff also asserts that it has capacity because medical staffs have been recognized as legal entities with capacity to sue in foreign jurisdictions with laws similar to Minnesota's. Avera Marshall contends that Minnesota common law has not recognized unincorporated associa-

tions as legal entities, that this lack of recognition has not been abrogated by Minnesota statutes, and that the foreign cases do not provide persuasive authority for the medical staff's argument.

■ Capacity to sue refers "to the right of [a] plaintiff to maintain the action." *Lehigh Valley Coal Co. v. Gilmore,* 93 Minn. 432, 434, 101 N.W. 796, 797 (1904). It is distinguishable from the concept of subject-matter jurisdiction, "which concerns the court's ability to consider a question, and standing, which concerns a party's right to bring a particular action." *Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 433 (Minn.App.1995), *review denied* (Minn. May 31, 1995).

### A. Minnesota common law and statutory law.

■ The medical staff describes itself as an unincorporated association, and focuses much of its argument on the legal status of unincorporated associations under Minnesota law. At the turn of the twentieth century, the Minnesota Supreme Court unambiguously held that unincorporated associations lack capacity to sue. *See St. Paul Typothetae v. St. Paul Bookbinders' Union No. 37,* 94 Minn. 351, 358, 102 N.W. 725, 727 (1905) ("[I]n many of the states authority is expressly granted [for unincorporated associations] to sue and be sued, but such is not the statute in this state.").

*Typothetae* put a stake in the ground, and since then the Minnesota Supreme Court and this court have repeatedly visited the question of whether an unincorporated, organized group of individuals comprises a legally cognizable entity. Both courts have rejected the notion that these organizations have the capacity to sue or be sued. *See Galob v. Sanborn,* 281 Minn. 58, 62, 160 N.W.2d 262, 265 (1968) (holding that the district court was powerless to

declare a village public utility commission a legal entity with the power to sue and be sued in the absence of any authority granting the commission such authority); *State ex rel. Ryan v. Civil Serv. Comm'n of Minneapolis,* 278 Minn. 296, 298, 154 N.W.2d 192, 194 (1967) (holding that the civil service commission is not a legal entity capable of suing or being sued because it has not been recognized as such by statute or charter); *Bloom v. Am. Express Co.,* 222 Minn. 249, 252, 23 N.W.2d 570, 573 (1946) (noting the long-established rule that, in the absence of an enabling statute, an unincorporated association cannot sue or be sued); *George v. Univ. of Minn. Athletic Ass'n,* 107 Minn. 424, 426–27, 120 N.W. 750, 751–52 (1909) (rejecting a lawsuit against the athletic association because it was merely an agency of the university); *Typothetae,* 94 Minn. at 361, 102 N.W. at 728 (rejecting the Typothetae as a legal entity with capacity to sue); *Hyatt v. Anoka Police Dep't,* 700 N.W.2d 502, 505–06 (Minn.App.2005) (holding that a police department is merely an agency of the city and not a legal entity), *review denied* (Minn. Oct. 18, 2005).

The medical staff argues that the common-law prohibition against lawsuits by unincorporated, organized groups was abrogated in 1947 when the legislature adopted Minn.Stat. § 540.151, which provides that:

> When two or more persons associate and act, whether for profit or not, under the common name, including associating and acting as a labor organization or employer organization, whether such common name comprises the names of such persons or not, they may sue in or be sued by such common name, and the summons may be served on an officer or a managing agent of the association. The judgment in such cases shall accrue to the joint or common benefit of and bind the joint or common property of the associates, the same as though all had been named as parties to the action. Any money judgment against a labor organization or employer organization shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or the member's assets.

Minn.Stat. § 540.151 (2012).

 Section 540.151 has been characterized as "only procedural" by the Eighth Circuit Court of Appeals. *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032, 1049 (8th Cir.2002). Our supreme court has explained the difference between statutes establishing procedural law and those establishing substantive law. *See State v. Johnson,* 514 N.W.2d 551, 554–55 (Minn.1994). Substantive statutes are statutes that create, define, and regulate rights. *Id.* Procedural statutes are statutes that prescribe the method of enforcing those rights or obtaining redress for their invasion, but that " 'neither create[ ] a new cause of action nor deprive[ ][a] defendant of any defense on the merits.' " *Id.* (quoting *Strauch v. Superior Court,* 107 Cal.App.3d 45, 49, 165 Cal.Rptr. 552 (1980)). The medical staff agrees that section 540.151 is procedural to the extent that it does not create a cause of action and because a party must still have standing to assert a claim. But it contends that the statute is substantive to the extent that it identifies the characteristics of the group of persons upon which legal capacity is being conferred by the statute.

 We disagree with the medical staff's view that section 540.151 creates a substantive right to sue and be sued. The language of the statute closely links the capability of an organization to sue and be sued with the procedural act of serving a

summons. The statute also addresses the operation of a lawsuit when its caption does not fully name the entity, which we also interpret as a procedural matter.[1]

The medical staff presses its view that section 540.151 has been applied as substantive law by relying on two cases from the federal district courts. *See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 788 F.Supp.2d 950, 955–56 (D.Minn.2011); *Winn v. Ski Club of the Ass'n of Fellows Mayo Found.*, 207 F.Supp. 448, 449 n. 1 (D.Minn.1962). In *Tarek*, the district court concluded that the claims of the American Civil Liberties Union of Minnesota should not be dismissed because the organization had failed to timely file certain corporate filings. 788 F.Supp.2d at 956. While the district court cited section 540.151, the court did not explain how the Eighth Circuit Court of Appeals's recognition that the statute is procedural affected its analysis. *See id.* Similarly, *Winn* provides no factual description or legal analysis of how it applied section 540.151. 207 F.Supp. at 449 n. 1. And neither case is binding upon this court. *See State ex rel. Hatch v. Emp'rs Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn.App.2002) ("[F]ederal court interpretations of state law are not binding on state courts."), *review denied* (Minn. Aug. 6, 2002).

The medical staff has also identified an order of this court that appears to treat section 540.151 as substantive law. *See Citizens Concerned for Kids v. Yellow Med. E. Indep. Sch. Dist. No. 2190*, No. A05–0071 (Minn.App. May 24, 2005). The order itself notes that "[s]pecial term orders have no precedential value and should not be cited as authority." *Id.* (citing

*State v. Russell*, 481 N.W.2d 148, 150 (Minn.App.1992)). Moreover, the order appears to be addressing the procedural issue of personal service, and it does not contain a complete analysis of section 540.151. *See id.* In short, the medical staff has not identified any binding caselaw to support its view that section 540.151 has abrogated Minnesota's common-law denial of capacity to sue to unincorporated associations.

Other cases since 1947 (when section 540.151 was enacted) treat the statute as procedural and not substantive. *See State ex rel. Ryan*, 278 Minn. at 298, 154 N.W.2d at 194; *Galob*, 281 Minn. at 62, 160 N.W.2d at 265; *Hyatt*, 700 N.W.2d at 506.

The medical staff attempts to distinguish these types of cases by arguing that they are factually dissimilar because they only address the capacity of governmental agencies to sue or be sued, and such issues should be relegated to the specialized area of governmental law and immunities. The medical staff is right: governmental liability comes with a unique set of rules and exceptions. But this does not explain why these cases still do not stand for the proposition that unincorporated associations have capacity to sue and be sued. In fact, the entities described in the foregoing cases resemble the types of organizations contemplated by section 540.151: a police department, civil service commission, and public utilities commission can all be fairly described as groups that "associate and act, whether for profit or not, under [a] common name." Minn.Stat. § 540.151. Despite their resemblance to the description contained in section 540.151, the supreme court and this court concluded that each of these organizations were not legal

---

1. Although the statute is unambiguous and recourse to its legislative history is unnecessary, *see* Minn.Stat. § 645.16 (2012), we conducted a review of the legislative archives pertaining to passage of the statute. We found no helpful information to assist our decision.

entities with the capacity to sue or be sued. Because these cases do not hold that section 540.151 establishes a substantive right for an unincorporated association to sue and be sued, we conclude that even pre–1947 Minnesota caselaw on this point still binds us.

An organization, such as the medical staff, which is not its own "ultimate creator," owns no property, and can "contract no indebtedness and pay no bills" without approval is not a legal entity with capacity. *George*, 107 Minn. at 426, 120 N.W. at 751. "[I]n the absence of a statute otherwise providing," an unincorporated group like the medical staff is not a legal entity. *Typothetae*, 94 Minn. at 357, 102 N.W. at 726; *cf.* Minn.Stat. § 302A.161, subd. 3 (2012) (providing a business corporation with legal capacity and the power to sue and be sued, complain, defend, and participate as a party in its corporate name).[2]

### B. Caselaw from other jurisdictions.

As the foregoing discussion explains, the medical staff must show not only that it is a legally cognizable entity (presumably an unincorporated association), but that an unincorporated association has the capacity to sue in Minnesota. The medical staff has not prevailed under Minnesota law on either of these fronts. Yet both parties and the district court engaged in a robust analysis of the caselaw from other jurisdictions addressing whether a medical staff is an unincorporated association.

The application of these cases to the analysis that we must conduct is not clear. Assuming that section 540.151 is procedural and not substantive, Minnesota law does not contain a controlling definition of an unincorporated association. And even if a clear-cut definition existed, Minnesota still does not recognize an unincorporated association as a legal entity with capacity to sue.

The medical staff's reliance on cases from other jurisdictions is aimed at persuading this court that a medical staff ought to be designated an unincorporated association and recognized as having the capacity to sue. Because we conclude that Minnesota law has answered this question, the views of foreign jurisdictions on whether a medical staff is an unincorporated association does little to advance our analysis. However, we will briefly consider the parties' arguments on these foreign cases.

Avera Marshall (and the district court) correctly noted that the leading case that the medical staff cites in support of its position is lacking in clear analysis. *See St. John's Hosp. Med. Staff v. St. John Reg'l Med. Ctr., Inc.,* 90 S.D. 674, 245 N.W.2d 472, 474–75 (1976). There, the court identified the medical staff as an "unincorporated association." *Id.* at 472. Later, it summarily concluded that the medical staff was a proper party to bring the action. *Id.* at 474. The court provided no analysis of what attributes of the medical staff qualified it as an unincorporated association. *Id.* And without such a discussion, the case provides little guidance in applying the attributes of unincorporated associations suggested by Minnesota cases such as *Typothetae* and *George*.

The medical staff also relies on an order from a state district court in Ventura County, California, to support its claim that it has legal capacity. *See Med. Staff*

---

2. The parties and amici discuss the Uniform Unincorporated Nonprofit Association Act of 1996, which, if adopted in Minnesota, would grant unincorporated associations status as a legal entity with capacity to sue and be sued.

Unif. Unincorporated Nonprofit Ass'n Act § 6(a), 6B U.L.A. 715 (2008). Minnesota has not adopted this model legislation, and we decline to address arguments regarding its application.

*of Cmty. v. Cmty. Mem'l,* No. CIV–219107 (Ventura Cnty., Cal.Super. Ct. Aug. 7, 2003). The California state district court seems to have concluded that a medical staff has capacity based on policy considerations, namely because "the relationship between a hospital and its medical staff is a unique one where each has a potential legal liability to the patient population whose welfare is their mutual concern." *Id.* at 2. While this policy observation is unimpeachable, it does little to advance the discussion of how the medical staff constitutes a legally cognizable entity with the capacity to sue under Minnesota law.

The medical staff cites other cases for the proposition that medical staffs are unincorporated associations, but these cases come from district courts in foreign jurisdictions and contain only rudimentary analyses of *why* a medical staff is a legal entity with the capacity to sue. In other words, that the courts in the foregoing discussion clearly reached a certain result favorable to the position advocated by the medical staff does not mean that this court can deduce from those cases a sound rule of law that ought to be applied here.

A key authority supporting Avera Marshall's position contains more in-depth analysis. In *Exeter Hosp. Med. Staff v. Bd. of Trs. of Exeter Health Res., Inc.,* 148 N.H. 492, 810 A.2d 53, 57 (2002), the New Hampshire Supreme Court concluded "that the medical staff lacks status under the law to sue as a separate entity." It cited several factors to support its conclusion that the medical staff was not a separate legal entity, including the medical staff's status as "a subordinate administrative unit dependent upon and accountable to the hospital," New Hampshire regulations requiring that the medical staff serves under the authority of the hospital, the hospital's retention of ultimate authority to approve or deny requests for privi-

leges, and the hospital's retention of authority to unilaterally adopt and amend bylaws, rules, and regulations. *Exeter Hosp.,* 810 A.2d at 56–57. Notably, these factors all fall in favor of Avera Marshall in the present case. *See* Minn. R. 4640.0700, .0800 (vesting authority for management, control, and operation with hospital administration and charging the medical staff with responsibility to formulate bylaws, rules, and regulations subject to the approval of the hospital). These factors also echo those relied on by the Minnesota Supreme Court in *George* to support its conclusion that the University of Minnesota Athletic Association lacked the capacity to sue and be sued. *George,* 107 Minn. at 426–27, 120 N.W. at 751–52. Similarly, the court in *Ramey v. Hosp. Auth. of Habersham Cnty.,* 218 Ga.App. 618, 462 S.E.2d 787, 788 (1995), concluded that a medical staff was not a separate legal entity based partly on language in the bylaws and on the broad authority that Georgia rules and regulations grant to the hospital board to manage the hospital.

Considering the characteristics described in *George* and in light of the authority granted to the Avera Marshall board by the Minnesota rules and statutes addressing governance of hospitals and nonprofit corporations, *see* Minn.Stat. § 317A.201 (2012), we conclude that the district court was correct in finding that the medical staff lacks capacity to sue.

## C. Standing.

 The district court did not rule on whether the medical staff has standing. Assuming, for the sake of our discussion, that the medical staff is a legal entity with capacity to sue, standing will be acquired either when "the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *State by Humphrey*

*v. Philip Morris Inc.,* 551 N.W.2d 490, 493 (Minn.1996). An organization can derive standing from its members. *No Power Line, Inc. v. Minn. Envtl. Quality Council,* 311 Minn. 330, 334, 250 N.W.2d 158, 160 (1976). "[T]he underlying purpose of the doctrine of standing and the various tests which it has spawned is to guarantee that there is a sufficient case or controversy between the parties so that the issue is properly and competently presented to the court." *Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977) (quotation omitted).

The medical staff alleges that it is a party to a contract and that the hospital has violated the terms of that contract. As will be discussed later, the medical staff's theory that its bylaws constitute a contract is doubtful. However, for the purpose of a standing analysis, the allegation that a proper party with capacity to enter into contractual relations is suffering a breach of that contract is a claim that amounts to an injury in fact that grants the medical staff standing to sue.

## II. The medical staff bylaws do not comprise a contract that binds Avera Marshall and prevents it from unilaterally changing the bylaws.

The medical staff argues that the district court erred in finding that the medical staff bylaws are not a contract, that Avera Marshall is only obligated to substantially comply with the bylaws, and that Avera Marshall's process of promulgating new bylaws did not violate the original bylaws.[3] Avera Marshall contends that Minnesota law, the hospital's corporate bylaws, and the terms of the medical staff bylaws give the hospital the power to unilaterally modify the medical staff bylaws.

### A. Plain text of the bylaws.

Amici arguing for the interests of the medical staff contend that, when construing a written instrument, all of its provisions must be given effect and that Avera Marshall's reservation of power in the bylaws should not trump the rest of the bylaws. But this argument mischaracterizes the bylaws in one key respect: Avera Marshall does not reserve power to itself only once in the bylaws. It *repeatedly* reserves power to itself, and it *repeatedly* emphasizes that the bylaws and their procedures are subject to the ultimate control of Avera Marshall. Under the plain terms of the bylaws, Avera Marshall has reserved to itself the authority to unilaterally modify the bylaws when it so chooses.[4]

This view, of course, raises the question of why bylaws are promulgated in the first place if the hospital can rewrite them at its whim. The district court addressed this

---

3. Because this argument is advanced by individual members of the medical staff, it is necessary for us to address it notwithstanding our conclusion that the medical staff is not an entity with capacity to sue.

4. The district court concluded that Avera Marshall does not have unilateral authority to modify the bylaws, but that an aggrieved party does not have a contractual right to their enforcement. Instead, an affected member of the medical staff can bring an action in equity to enjoin Avera Marshall from acting or to require it to act in accordance with the medical staff bylaws. The district court also con-

cluded that Avera Marshall substantially complied with the bylaws in how it went about promulgating the revisions. It is not clear whether Avera Marshall is contesting this result, although Avera Marshall asserts that it has the authority to unilaterally amend the bylaws. Nonetheless, the medical staff is contesting this result, for it argues that Avera Marshall has only the power to "propose" changes to the medical staff bylaws, authority that is much more limited than that granted by the district court. Regardless of who is contesting the district court's holding, the issue is properly before us on appeal.

issue by concluding that the bylaws are not contractual, but are subject to judicial review and enforcement through the equitable powers of the courts, and that the hospital is only required to substantially comply with the bylaws. This is the same approach that has been adopted in some other jurisdictions, although there appears to be no clear legal authority to support this approach in Minnesota. Given the plain terms of the bylaws (and the discussion on the contractual nature of the bylaws below), we conclude that the bylaws are subject to unilateral modification by Avera Marshall.

## B. Minnesota caselaw.

The medical staff contends that the Minnesota Supreme Court has directly addressed the issue of whether medical staff bylaws are a contract. In *Campbell v. St. Mary's Hosp.*, 312 Minn. 379, 387–88, 252 N.W.2d 581, 586 (1977), our supreme court addressed a physician's claim that St. Mary's Hospital breached a contract with him when it did not consider an appeal of the termination of his staff privileges in accordance with the hospital's medical staff bylaws. The supreme court found in favor of the hospital, concluding that the physician "was afforded a full measure of his contractual due process rights at every stage of the proceedings." *Campbell*, 312 Minn. at 388, 252 N.W.2d at 587.

Although the medical staff draws numerous comparisons between its bylaws and the bylaws in *Campbell*, the *Campbell* opinion contains no analysis of why the bylaws constituted a contract, nor does the issue appear to have been argued by the parties or seriously considered by the court. While the comparisons to *Campbell* drawn by the medical staff suggest broad similarity between their bylaws and the bylaws of St. Mary's Hospital, the medical staff can only draw these comparisons be-

cause the supreme court published St. Mary's Hospital medical staff bylaws in an appendix to the opinion. *Id.* at 390–94, 252 N.W.2d at 587–90. Absent a robust analysis of the contractual nature of medical staff bylaws, *Campbell* is of limited utility in this dispute.

*In re Peer Review Action,* also cited by the medical staff, addressed the "Hospital's wrongful acts without legal justification, in willful disregard of Physician's procedural rights under Hospital's own policies." 749 N.W.2d 822, 829 (Minn.App. 2008), *review dismissed* (Minn. Aug. 21, 2008). This sentence, however, is the limit of the court's discussion of the contractual nature of the medical staff bylaws. Because these Minnesota cases are only tenuously relevant, the district court was justified in engaging in a more thorough analysis of contract law and its interplay with medical staff bylaws. Both *Campbell* and *In re Peer Review Action* address the individual rights of a physician, not the broader question of the authority of the hospital to set bylaws and govern the medical staff.

## C. Lack of consideration.

■■ A contract requires offer, acceptance, and consideration. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn.1983). "A promise to do something that one is already legally obligated to do does not constitute consideration." *Deli v. Hasselmo,* 542 N.W.2d 649, 656 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996).

■ The district court analyzed the medical staff bylaws in light of Minnesota rules governing hospitals and the hospital's own bylaws. It concluded that, from each perspective, the medical staff bylaws could not constitute a contract, either because the bylaws memorialized a preexisting duty of the parties or because Avera Mar-

shall never indicated an intent to be strictly bound by the terms of the medical staff bylaws.

Under the Minnesota rules governing hospitals, "[t]he governing body ... shall be responsible for [the hospital's] management, control, and operation. It shall appoint ... the medical staff. It shall formulate the administrative policies for the hospital." Minn. R. 4640.0700, subp. 2. "The medical staff *shall be responsible to the governing body of the hospital* for the clinical and scientific work of the hospital. It shall be called upon to *advise* regarding professional problems and policies." Minn. R. 4640.0800, subp. 1 (emphasis added).[5] The medical staff "shall formulate and, *with the approval of the governing body,* adopt bylaws, rules, regulations, and policies." *Id.,* subp. 2 (emphasis added). Further, the corporate bylaws of Avera Marshall require the board of directors to "organize the physicians ... into a medical-dental staff under medical-dental staff bylaws approved by the Board of Directors."

Avera Marshall has identified several cases from other jurisdictions that conclude that medical staff bylaws do not constitute a contract. *See, e.g., Tredrea v. Anesthesia & Analgesia, P.C.,* 584 N.W.2d 276 (Iowa 1998); *Todd v. Physicians & Surgeons Cmty. Hosp., Inc.,* 165 Ga.App. 656, 302 S.E.2d 378 (1983). The medical staff points to numerous cases holding the opposite. Many of those cases conclude

that the bylaws in and of themselves may not constitute a contract, but that the offer and acceptance of hospital privileges is an agreement that adopts the bylaws as contractual terms. *See, e.g., Gianetti v. Norwalk Hosp.,* 211 Conn. 51, 557 A.2d 1249, 1254–55 (1989); *Bass v. Ambrosius,* 185 Wis.2d 879, 520 N.W.2d 625, 627–28 (Wis. Ct.App.1994). No Minnesota case has directly addressed whether medical staff bylaws are contractual, and resort to the guidance of other jurisdictions is not necessary in light of this court's treatment of the principle of preexisting duty in contractual relations.

The medical staff argues that it is a general principle of contract law that, if a putative contract provides for the performance of something in excess of a preexisting duty (no matter how slight), then the requirement of consideration is met. According to the medical staff, the Minnesota rules only require that bylaws exist, but they do not prescribe what ought to be contained in the bylaws. Thus, any agreement by the medical staff to engage in or to forego certain activities—in particular, by agreeing to participate in Avera Marshall's system of hospital privileges—constitutes consideration beyond a preexisting legal duty.

But this approach does not accord with *Deli,* which addressed a preexisting legal duty of a University of Minnesota employee to return a videotape that was the

---

**5.** The parties dispute whether Minn.Stat. § 317A.201 limits Avera Marshall's ability to abdicate its authority to the medical staff, thereby controlling whether the bylaws can be construed as a contract. The statute requires that the business and affairs of a nonprofit corporation "be managed by or under the direction of a board of directors." Minn.Stat. § 317A.201. The medical staff contends that the district court misinterpreted *Mahan v. Avera St. Luke's,* 621 N.W.2d 150 (S.D.2001) (applying South Dakota's equivalent of Minn.

Stat. § 317A.201), and that Avera Marshall can lawfully cede some authority to the medical staff. However, this view appears to be contradicted by *Rehn v. Fischley,* 557 N.W.2d 328, 334 (Minn.1997), which noted that a nonprofit board derives its authority from the state via statute or from the corporation via its corporate bylaws. Minn.Stat. § 317A.111 (2012) does not permit modification of section 317A.201's requirement that ultimate authority rests with the board of directors.

property of the university. 542 N.W.2d at 657. By returning the videotape, which contained sexually explicit images of Deli and her husband, Deli claimed she provided consideration for her supervisor's promise not to view the tape by giving up her right to privacy and by giving the university images in which she claimed a property interest. *Id.* at 652, 657. This court rejected the notion that these sacrifices by Deli and the university's promise not to view the tape constituted consideration. *Id.* at 657. The university "had a duty to investigate the situation" and Deli had a duty to return the tape because it was university property. *Id.* While this court did not say so, it evidently concluded that Deli's abandonment of her privacy and property rights were subsumed by the preexisting duty to return the tape to the university, which "could not have done less and still claim to have thoroughly investigated." *Id.*

Here, both the medical staff and Avera Marshall had a duty to do nothing less than promulgate and adopt medical staff bylaws. The necessary implication—indeed, the very nature—of bylaws is to identify rules for how the parties conduct themselves. These rules regarding conduct flow directly from the underlying duty of both parties to establish the bylaws in the first place. Just as Deli's preexisting duty to return the university's proper-

ty implicated a relinquishment of her privacy and property rights in the videotape, the administrative conduct of the medical staff is part of, not in addition to, its preexisting duty regarding medical staff bylaws.[6]

As we noted earlier, the parties point to lines of cases from other jurisdictions, many of which consider preexisting duty in the context of medical staff bylaws. We interpret the current state of Minnesota law to require the result we reach today. Upon further review, our supreme court may decide to treat preexisting duty differently, but this court is bound to apply Minnesota precedent. In this case, binding precedent favors Avera Marshall's view that the bylaws are not contractual, and that the hospital has the authority to unilaterally amend the bylaws. The district court did not err when it granted Avera Marshall summary judgment.

### DECISION

The district court did not err in determining that the medical staff is not a party with the capacity to sue, and that its bylaws are not a contract between the medical staff and Avera Marshall.

**Affirmed.**

---

6. We find helpful the reasoning of the Supreme Court of Appeals of West Virginia in the case of *Kessel v. Monongalia Cnty. Gen. Hosp., Co.,* 215 W.Va. 609, 600 S.E.2d 321, 326–27 (2004), where the court concluded that "a hospital's medical staff bylaws do not constitute a contract between the hospital and its staff physicians" in part because the hospital was "bound by law to approve the bylaws of the medical staff, and the medical staff was bound to initiate and adopt bylaws, [and] neither party conferred on the other any more than what the law already required." The court also noted a distinction between the

operation of the bylaws in the context of fair-hearing and due-process requirements related to "allegations against a physician bearing on professional competency and conduct." *Kessel,* 600 S.E.2d at 327. Because the issue of how bylaws govern fair-hearing and due-process requirements is not before us today, we reach no conclusion as to the enforceability of the bylaws in that context. But the distinction between the operation of the bylaws in the context of administrative decisions versus an individual physician's procedural rights may be useful in understanding *Campbell.*